**LEWIS BRISBOIS BISGAARD & SMITH LLP**
ROY M. BRISBOIS, SB# 53222
brisbois@lbbslaw.com
JON P. KARDASSAKIS, SB# 90602
kardassakis@lbbslaw.com
221 North Figueroa Street, Suite 1200
Los Angeles, California 90012
Telephone: 213.250.1800
Facsimile: 213.250.7900

Attorneys for Defendant,
BMW OF NORTH AMERICA, LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN MORRIS, and GLENN R. SEMOW, On Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>BMW OF NORTH AMERICA, LLC,<br><br>Defendants. | CASE NO. C 07-02827 WHA<br><br>DEFENDANT BMW OF NORTH AMERICA, LLC'S POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT<br><br>Date: August 23, 2007<br>Time: 8:00 a.m.<br>Judge: William H. Alsup<br><br>Action Filed: May 31, 2007<br>Trial Date: None |

4837-5632-5889.1    C 07-02827 WHA
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................. 1

II. NEITHER PLAINTIFF HAS STANDING TO BRING A CLAIM UNDER THE UCL BECAUSE NEITHER PLAINTIFF SUFFERED INJURY IN FACT AND LOST MONEY AS A RESULT OF THE ALLEGED UNFAIR COMPETITION .......................................................... 2

III. PLAINTIFFS HAVE NOT AND CANNOT PLEAD A CLAIM FOR VIOLATION OF THE CLRA ................................................................................ 7

    A. THERE WAS NO TRANSACTION OR CONTRACT BETWEEN BMWNA AND PLAINTIFFS ............................................. 7

    B. IT IS NOT UNCONSCIONABLE TO EXLCUDE TIRES FROM A MANUFACTURERS' WARRANTY ................................. 9

IV. PLAINTIFFS HAVE NOT AND CANNOT PLEAD A CLAIM FOR BREACH OF IMPLIED WARRANTY ............................................................. 9

    A. THE FACTS PLED SHOW THAT THE VEHICLES PROVIDED SAFE AND RELIABLE TRANSPORTATION; THIS ESTABLISHES THERE WAS NO BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY ....................... 9

    B. THE BREACH OF IMPLIED WARRANTY CLAIM IS BARRED BY A LACK OF PRIVITY .................................................. 13

V. CONCLUSION ................................................................................................... 14

4837-5632-5889.1     i     C 07-02827 WHA
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

# TABLE OF AUTHORITIES

Page

## CASES

*All West Electronics, Inc. v M-B-W, Inc.*,
   64 Cal.App.4th 717, (1998) .................................................................. 17

*American Suzuki Motor Corp. v. Superior Court*,
   37 Cal.App.4th 1291 (1995) .................................................................. 10, 11, 13

*Arnold v. Dow Chemical Co.*,
   91 Cal.App.4th 698, (2001) .................................................................. 13

*Carlson v. General Motors Corp.*
   (4th Cir.1989) 883 F.2d 287 .................................................................. 10

*Daugherty v American Honda Motor Co., Inc.*,
   142 CalApp.4th 1394, (2006) .................................................................. 5

*Feinstein v. Firestone Tire & Rubber Co. ("Feinstein")*,
   535 F.Supp. 595 (S.D. N.Y. 1982) .................................................................. 10

*Klein v Earth Elements, Inc.*,
   59 Cal.App.4th 965 (1997) .................................................................. 5

*Meyer v Sprint Spectrum L.P.*,
   150 Cal.App.4th 1136, (2007) .................................................................. 3

*Nordberg v Trilegiant Corp.*,
   445 F.Supp.2d 1082 (N.D. Cal. 2006) .................................................................. 8

*Saunders v Superior Court*,
   27 Cal.App.4th 832, (1994) .................................................................. 4

*Skelton v. General Motors Corp.*,
   supra, 500, F.Supp. 1181 .................................................................. 11

*Taterka v. Ford Motor Co.*
   86 Wis.2d 140, 271 N.W.2d 653 (1978) .................................................................. 10, 11

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

*Vess v. Ciga-Geigy Corp. USA,*
    317 F.3d 1097 (9th Cir. 2003) ................................................................. 5, 6, 7

## **STATUTES**

Cal Business & Professions Code

    § 17200 .............................................................................................. 1, 2, 5, 7, 8

    §1 7204 ............................................................................................... 2, 3, 4

Cal. Civil Code

    § 1770 ................................................................................................ 1, 7

    § 1770(a)(19) ..................................................................................... 1, 7

    § 1795.90 ........................................................................................... 1, 3

    § 1795.92 ........................................................................................... 3

Cal. Commercial Code

    § 2314 ................................................................................................ 1

## **RULES**

F.R.C.P. 9(b) ............................................................................................. 5, 6, 7

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant BMW of North America, LLC ("BMWNA") respectfully submits this Memorandum of Points and Authorities in support of its Motion to Dismiss each of the counts and the Complaint in its entirety.

### I. INTRODUCTION

Plaintiffs complain that certain 2006 and 2007 BMW 3 series vehicles equipped with Turanza EL42 "run-flat" tires or equipped with Potenza RE050 "run flat" tires manufactured by Bridgestone Firestone North American Tire, LLC ("Bridgestone") wear unevenly and prematurely, resulting in a rough ride and excess noise from the tires. (Complaint, ¶ 2.) Plaintiffs complain that the tires must be replaced prematurely. (Complaint, ¶ 2.) The Complaint purports to allege three causes of action for (1) violation of California's Unfair Competition Law ("UCL"), Cal. Business & Professions Code ("B&P") §17200 et seq., as a result of an alleged secret warranty program in violation of Cal. Civil Code §1795.90 (2) violation of the Consumer Legal Remedies Act ("CLRA"), Cal. Civil Code §1770(a)(19), by allegedly inserting an unconscionable provision in a contract; and (3) breach of an implied warranty of merchantability, Cal. Commercial Code §2314, because the tires on plaintiffs' vehicles wore out and had to be replaced sooner than they hoped.

BMWNA is a distributor of BMW automobiles. As discussed in more detail below, plaintiffs' do not have standing to maintain a claim for violation of the UCL. Following the passage of Proposition 64, a private plaintiff can bring this type of claim only if they suffered injury in fact and lost money as a result of an unlawful, unfair or fraudulent alleged business practice. Neither plaintiff meets that test. The facts pled establish they suffered no injury and did not lose money as a result of the acts alleged.

Plaintiffs have not and cannot allege a violation of CLRA against BMWNA because they did not enter into any transaction with BMWNA and they do not allege there was a contract between plaintiffs and BMWNA. BMWNA cannot be found to

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

have violated CLRA by inserting an unconscionable provision in a contract (which is the only violation plaintiffs attempt to allege) where, as here, there was no contract between BMWNA and the plaintiffs. Plaintiffs appear to be confusing a warranty with a contract and seem to claim that it is somehow unconscionable for an automobile manufacturer or distributor to exclude tires from a warranty. It is the standard practice for automobile manufacturers to exclude tires from their warranty. This is entirely proper and, as a matter of law, it is not unconscionable to do so.

Plaintiffs cannot state a claim for breach of implied warranty of merchantability because tire wear is not a basic defect that renders a vehicle unfit for its ordinary purpose of providing transportation. Also, the implied warranty claim fails as a matter of law because there was no privity between plaintiffs and BMWNA as is required to maintain this claim under California law.

## II. NEITHER PLAINTIFF HAS STANDING TO BRING A CLAIM UNDER THE UCL BECAUSE NEITHER PLAINTIFF SUFFERED INJURY IN FACT AND LOST MONEY AS A RESULT OF THE ALLEGED UNFAIR COMPETITION

To plead a violation of B&P § 17200, *et seq.*, plaintiffs must allege unfair competition which is defined to mean and include "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code." B&P § 17200.

In November, 2004, California voters approved Proposition 64, which made substantive changes in B&P § 17204 and other parts of the UCL. Proposition 64 found and declared:

> These unfair competition laws are being misused by some private attorneys who:
>
> (1) File frivolous lawsuits as a means of generating attorney's fees without creating a corresponding public benefit.

(2) File lawsuits where no client has been injured in fact. (Proposition 64, Section 1(b)(1) and (2). Proposition 64 revised B&P § 17204 to prohibit suits by persons other than the Attorney General or district attorneys or a person "who has suffered injury in fact and has lost money or property as a result of such unfair competition." *Meyer v Sprint Spectrum L.P.*, 150 Cal.App.4th 1136, 1139 (2007) ["To assert a claim under the UCL, an individual plaintiff must have suffered an 'injury in fact' and 'lost money or property as a result of [the alleged] unfair competition."]

The Complaint's first count purports to plead a violation of California's UCL, based on an alleged unlawful business practice with the alleged unlawful business practice being an alleged violation of Cal. Civil Code §1795.90 et seq. (which the Complaint refers to as the "Secret Warranty Act.") Civil Code §1795.92(a) provides: "A manufacturer shall, within 90 days of the adoption of an adjustment program, subject to priority for safety or emission-related recalls, notify by first-class mail all owners or lessees of motor vehicles eligible under the program of the condition giving rise to and the principal terms and conditions of the program." Plaintiffs allege BMWNA adopted an adjustment program within the meaning of the Act because in January 2007, it issued Technical Service Bulletin No. SI B 36 06 06 ("TSB").[1] (Complaint, ¶26.) According to the Complaint, "The TSB issued by BMW constitutes a secret warranty adjustment program pursuant to which BMW, with respect to the subject vehicles equipped with the Turanza run-flat tires, now (a) automatically pays for full replacement of tires (including 100% of labor) experiencing premature and/or irregular tire wear prior to 10,000 miles and (b)

---

[1] BMWNA denies it committed any violations and its references to plaintiffs' allegations should not in any way be deemed an admission that plaintiffs' allegations are correct or have merit. For example, plaintiffs mischaracterize the TSB as a warranty program which it is not.

automatically pays fifty percent (50%) of the replacement of tires (including 100% of labor) experiencing premature and/or irregular tire wear prior to 20,000 miles." (Complaint, ¶28.) Plaintiffs' claim is that "BMW, however, has failed and refused to notify customers, including Plaintiff Morris, regarding the existence of the secret warranty program in the manner required by the Secret Warranty Act." (Complaint, ¶28.)

Morris admits his vehicle had at least 15,416 miles on the odometer when he replaced his tires. (Complaint, ¶33.) According to plaintiffs' theory, pursuant to the TSB, BMWNA should have paid 50% of the replacement tires including 100% of labor. Plaintiffs admit Morris received this. "Morris had all four tires replaced at Sonnen BMW. He was required to pay for two of the replacement tires, at a total cost of $450 plus sales tax." (Complaint, ¶33.) His admission that he had four tires replaced, but paid for only two establishes as a matter of law that he did not suffer injury in fact and lose money as a result of the alleged violation. Pursuant to B&P §17204, since he did not suffer injury in fact and lose money as a result of the alleged violation, Morris has no standing to make a claim.

Plaintiff Semow has no standing either. Plaintiffs allege there was a secret warranty program specific to Turanza run-flat tires. (Complaint, ¶28.) Semow's vehicle did not have Turanza run-flat tires. His vehicle came equipped with Potenza run-flat tires. (Complaint, ¶ 35.) Even assuming for sake of analysis there was a violation of Cal. Civil Code § 1795.92 (which BMWNA does not admit or concede), Semow did not suffer injury in fact and loss of money or property as a result of the alleged violation.

Apparently recognizing this inability to plead facts to support a claim of violation based on an "unlawful" act, the Complaint pleads, "By failing to extend the TSB to the Potenza run-flat tires, BMW engaged in unfair practices under B&P § 17200." (Complaint, ¶ 49.) This does not save the claim. An "unfair" practice under the UCL is one "whose harm to the victim outweighs its benefits." *Saunders v*

*Superior* Court, 27 Cal.App.4th 832, 839 (1994). To state a claim under the "unfair" prong of the UCL, it is not sufficient that a plaintiff simply label a practice "unfair" in the complaint. A plaintiff must, among other things, allege a practice where "the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition, and is not an injury the consumers themselves could reasonably0 have avoided." *Daugherty v American Honda Motor Co., Inc.*, 142 CalApp.4th 1394, 1503 (2006). See, also, *Klein v Earth Elements, Inc.*, 59 Cal.App.4th 965 (1997), where the court dismissed the claim. As a matter of law, a decision not to extend a warranty beyond its terms cannot by itself amount to an "unfair" business practice so as to support a claim under UCL. Plaintiffs fail to plead they suffered actual injury and lost money as a result of an "unfair" business practice.

The Complaint also makes passing reference to "fraudulent business practices" (Complaint, ¶ 50) without specifying who, what where or when. This cannot save the claim because it fails to meet Rule 9(b) standards for a claim premised on fraud. Federal Rule of Civil Procedure 9(b) provides, in pertinent part:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity . . . .

"Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciga-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) *("Vess").* Rule 9(b) applies to the extent plaintiffs' purport to plead a violation of the UCL based upon a fraudulent business practice.

In *Vess*, Vess brought a diversity class action alleging the defendants acted illegally to increase sales of the drug Ritalin, in violation of the California Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 et seq. and Cal. B&P §§ 17200 and 17500. Vess' complaint alleged the defendants conspired to, among other things, "fraudulently and falsely" represent that the diagnostic criteria for ADD in the Diagnostic and Statistical Manual were scientifically reliable and "in an effort to cover up this fraud" one defendant improperly clustered data. The District Court

dismissed the complaint based on its failure to plead fraud with particularity as required by Rule 9(b). Vess argued on appeal that Rule 9(b) did not apply to his state law statutory claims. The Ninth Circuit disagreed: "It is established law in this circuit and elsewhere, that Rule 9(b)'s particularity requirement applies to state-law causes of action." *Vess* at 1103. "Vess is correct that fraud is not an essential element of California statutes on which he relies. (Citation omitted.) But he is not correct in concluding that his averments of fraud therefore escape the requirements of the rule." *Vess* at 1103. As the Ninth Circuit explained:

> In cases where fraud is not a necessary element of a claim, a plaintiff may choose nonetheless to allege in the complaint that the defendant has engaged in fraudulent conduct. In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim. In that event, the claim is said to be "grounded in fraud" or to "sound in fraud," and the pleading in that claim as a whole must satisfy the particularity requirement of Rule 9(b). (Citations omitted.)

*Vess* at 1103-1104. The court recognized that a plaintiff may choose not to allege a unified course of fraudulent conduct in support of a claim, but rather to allege some fraudulent and some non-fraudulent conduct. In that event, only the allegations of fraud are subject to Rule 9(b)'s heightened pleading requirements. Rule 9(b)'s heightened pleading requirements applies to any averment of fraud supporting the claim. *Vess* at 1104.

"If particular averments of fraud are insufficiently pled under Rule 9(b), a district court should 'disregard' those averments, or 'strip' them from the claim. The court should then examine the allegations that remained to determine whether they state a claim." *Vess* at 1105. Vess purported to plead claims under Cal. Civil Code § 1770 and B&P §§ 17200 and 17500. The Ninth Circuit held, "To the extent that

Vess alleges fraud, his allegations should be 'disregarded,' (citation omitted), or 'stripped from the claim,' (citation omitted), for failure to satisfy Rule 9(b)." *Vess* at 1105.

The passing reference to "fraudulent business practices" in the Complaint does not meet Rule 9(b) standards for a claim based on fraud. That averment must, therefore, be stripped away and cannot support the alleged violation of the UCL.

### III. PLAINTIFFS HAVE NOT AND CANNOT PLEAD A CLAIM FOR VIOLATION OF THE CLRA

#### A. THERE WAS NO TRANSACTION OR CONTRACT BETWEEN BMWNA AND PLAINTIFFS

The Complaint's second count alleges BMWNA violated Cal. Civil Code §1770(a)(19), which provides, "The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful: ... (19) inserting an unconscionable provision in [a] contract." (Complaint, ¶ 65.) In order to violate §1770(a)(19), the defendant must have inserted an unconscionable provision in a contract. This necessarily requires that the defendant was a party to a contract that contained an allegedly unconscionable provision. Plaintiffs' claims are fatally defective because plaintiffs do not and cannot allege that they entered into a transaction with BMWNA or that there was a contract between plaintiffs and BMWNA. BMWNA distributes vehicles to independent authorized dealers who, in turn, sell the vehicles to consumers. BMWNA did not sell vehicles to these plaintiffs. There was no transaction between BMWNA and plaintiffs. There was no contract between BMWNA and plaintiffs.

Plaintiff "Morris purchased a new 2006 BMW 330i ... from Courtesy Motors, an authorized BMW dealership located in Chico, California." (Complaint, ¶4.) Plaintiff "Semow purchased a new 2006 BMW 330i ... from Weatherford BMW, an authorized BMW dealership located in Emeryville, California." (Complaint, ¶5.)

Neither plaintiff claims to have purchased a vehicle from BMWNA. Neither plaintiff alleges a contract between plaintiffs and BMWNA. CLRA's prohibition against inserting an unconscionable provision in a contract necessarily cannot have been violated where, as here, there was no contract with the defendant.

In *Nordberg v Trilegiant Corp.*, 445 F.Supp.2d 1082 (N.D. Cal. 2006) ("*Nordberg*"), Trilegiant marketed and sold membership programs for goods and services. Plaintiffs were consumers who alleged either that they were automatically enrolled in, and charged membership fees for, defendant's programs simply as a result of accepting a "free" or "no charge" trial memberships or were charged for membership despite no prior contact with defendant or their representatives. Plaintiffs sought to allege violation of CLRA and other claims. The court granted defendants' motion to dismiss as to plaintiff Smith whose claim was that he was charged for membership despite having had no contact whatsoever with the defendants. The court recognized that since he failed to allege any agreement was entered into with the defendants, he had no claim under CLRA:

> On the other hand, plaintiff Smith's interactions with defendants' agents do not involve any form of "agreement." Indeed, it is the express *lack* of agreement and the subsequent refusal to fully refund the unauthorized charges that lie at the heart of Smith's complaint. Accordingly, Smith has not stated a valid claim under the CLRA; his complaint is better handled as a common law claim for conversion.

*Nordberg*, 445 F.Supp.2d 1082 at 1097.

Plaintiffs Morris and Semov allege they entered into transactions with independent dealerships from whom they purchased vehicles. This provides no basis to sue BMWNA.

///

///

### B. IT IS NOT UNCONSCIONABLE TO EXLCUDE TIRES FROM A MANUFACTURERS' WARRANTY

The Complaint alleges, "BMW's express warranty purports to disclaim coverage for tires ...." (Complaint, ¶ 39.) Plaintiffs allege "BMW's attempt to disclaim any and all coverage for the run-flat tires, in the face of its knowledge and conduct was unconscionable and void." (Complaint, ¶ 39.) It is the standard practice in the industry that automobile manufacturers' warranties do not extend to tires. Notably, plaintiffs do not allege that any automobile manufacturer or distributor provides a warranty that extends to tires. Plaintiffs do not allege that any manufacturer or distributor warrants the number of miles a consumer can drive before the tires must be replaced because they have worn out.

There are no safety issues raised here. Plaintiffs' claim is that Turanza and Potenza run-flat tires are subject to "premature and uneven tire wear (including excessive noise) requiring that the tires be replaced ...." (Complaint, ¶21.) There is no allegation the vehicles have been involved in accidents or are likely to cause accidents. Nothing in California law supports a claim that is unconscionable for an automobile manufacturer or a distributor not to warrant tire wear.

For both of these reasons the second count should be dismissed.

## IV. PLAINTIFFS HAVE NOT AND CANNOT PLEAD A CLAIM FOR BREACH OF IMPLIED WARRANTY

### A. THE FACTS PLED SHOW THAT THE VEHICLES PROVIDED SAFE AND RELIABLE TRANSPORTATION; THIS ESTABLISHES THERE WAS NO BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

California Commercial Code §2314 provides for an implied warranty of merchantability. "Goods to be merchantable must be at least such as (a) Pass without objection in the trade under the contract description; and ... (c) Are fit for the ordinary purposes for which such goods are used ...." Cal. Comm. Code §2314 (2).

Accordingly, a claim for breach of the implied warranty of merchantability requires that a plaintiff plead and prove, among other things, that the product was not fit for the ordinary purpose for which it is used.

In *American Suzuki Motor Corp. v. Superior Court*, 37 Cal.App.4th 1291 (1995) ("*American Suzuki*"), plaintiffs attempted to plead a class action seeking redress for, among other things, breach of the implied warranty of merchantability, based on allegations the Suzuki Samurai had a high center of gravity, a narrow tread width, and light weight, which combined to create an unacceptable risk of a deadly rollover accident. Plaintiffs did not allege they had been injured personally or had incurred any consequential property damage as a result of the design defect. They sought damages "measured by the cost of repairing the inherent safety defect in the Samurai." The trial court found that plaintiffs had presented sufficient evidence tending to show that the Samurai had an "inherent defect" consisting of "a roll-over propensity by reason of a high center of gravity and a narrow [track width]," and certified for class treatment two Commercial Code-based implied warranty counts and a Song-Beverly Act claim. Thereafter, the court denied Suzuki's motion to decertify the class. The Court of Appeal issued a peremptory writ of mandate directing the trial court to vacate its order certifying the class and denying Suzuki's motion to decertify the class, and directing the trial court to enter a new order granting Suzuki's motion to decertify the class. The court explained that the implied warranty of merchantability does not "impose a general requirement that goods precisely fulfill the expectation of the buyer. Instead it provides a minimum level of quality." (Citations omitted.) *American Suzuki* at 1296. The court recognized:

> Courts in other jurisdictions have held that in the case of automobiles, the implied warranty of merchantability can be breached only if the vehicle manifests a defect that is so basic it renders the vehicle unfit for its ordinary purpose of providing transportation. (See *Feinstein v. Firestone Tire & Rubber Co.* ("*Feinstein*"), supra, 535 F.Supp. 595;;

>    *Carlson v. General Motors Corp.* (4th Cir.1989) 883 F.2d 287, 297-
>    298, cert. den.; *Taterka v. Ford Motor Co.* (1978) 86 Wis.2d 140, 271
>    N.W.2d 653; *Skelton v. General Motors Corp., supra,* 500 F.Supp.
>    1181, 1191.)

*American Suzuki* at 1296. Only a small percentage of the Samurais sold had been involved in a rollover accident. The others had no claim for beach of the implied warranty:

>    Because the vast majority of the Samurais sold to the putative class
>    'did what they were supposed to do for so long as they were supposed
>    to do it' (*Feinstein v. Firestone Tire and Rubber Co., supra,* 535
>    F.Supp. at p. 603), we conclude that these vehicles remained fit for
>    their ordinary purpose. This being so, their owners are not entitled to
>    assert a breach of implied warranty action against Suzuki . . . .

*American Suzuki,* 37 Cal.App.4th 1291, 1298-99.

In *Feinstein v. Firestone Tire & Rubber Co.* ("*Feinstein*"), 535 F.Supp. 595 (S.D. N.Y. 1982), cited by the court in *American Suzuki,* plaintiffs sought to obtain certification of a class action alleging certain Firestone tires were defective. In denying class certification, the court recognized that the bulk of the putative class owned tires that had not suffered a blow-out and that, accordingly, those putative class members had no claim. "Within the context of a suit for breach of implied warranty a 'defect' is of legal significance only if it renders a tire unfit for its intended purpose; and the undisputed evidence of actual performance is that the majority of the Firestone tires, whatever their imperfections may have been, did not have defects making them unfit for their intended use." *Feinstein* at 604-605.

In *Carlson v. General Motors Corp.,* (4th Cir.1989) 883 F.2d 287, also cited by the court in *American Suzuki,* plaintiffs who had experienced no malfunction sought certification of an implied warranty class alleging that a latent defect caused their vehicles to experience "diminished resale value." (*Id.* at pp. 297-298.) In

1  dismissing these claims the court held that Uniform Commercial Code section 2-314
2  did not encompass plaintiffs' "loss of resale value claims." The vehicles had "served
3  the traditionally recognized 'purpose' for which automobiles are used. Since cars are
4  designed to provide transportation, the implied warranty of merchantability is simply
5  a guarantee that they will operate in a 'safe condition' and 'substantially free of
6  defects.' [Citation.] Thus, 'where a car can provide safe, reliable transportation[,] it is
7  generally considered merchantable.' [Citation.]" ( *Ibid.*)

8  Here plaintiffs' Complaint effectively admits their BMW's provided safe,
9  reliable transportation. Plaintiff Morris purchased his BMW on or about August 4,
10 2005, and drove for 17 months and 15,416 miles before the dealer recommended the
11 tires be replaced on or about January 15, 2007. (Complaint, ¶ 31.) He then drove the
12 vehicle for more than two additional months and some unstated number of additional
13 miles, before he replaced the tires on March 27, 2007. (Complaint, ¶33.) The
14 Complaint does not claim he was involved in an accident or even that he had a flat
15 tire. The only reasonable conclusion from the facts alleged is that he drove the car
16 safely and reliably for something well over 15,416 miles. The Complaint's silence
17 on any subsequent developments implies Morris continues to safely drive the vehicle
18 today. As a matter of law, there is no claim here against BMWNA for breach of the
19 implied warranty of merchantability.

20 Plaintiff Semow purchased his BMW on or about September 25, 2006.
21 (Complaint, ¶34.) He drove 16,214 miles before a dealer recommended he replace
22 his rear tires. (Complaint, ¶ 36.) He then went to an independent repair facility,
23 which replaced those two tires. (Complaint, ¶36.) The absence of any allegation
24 regarding any event after he replaced two tires on December 23, 2006 implies that he
25 continues to safely drive the vehicle and apparently is still driving on the two original
26 tires that he does not allege have ever been replaced.

27 Consumers expect that tires will wear out and will have to be replaced. How
28 many miles a particular vehicle gets before its tires wear out can vary widely and is

heavily influenced by, among other things, whether the vehicle has been properly maintained (including keeping the tires properly inflated, rotating the tires as recommended, and keeping the proper alignment) as well as the type of driving done. BMWNA did not warrant any particular tire life on plaintiffs' tires. As the court held in *American Suzuki,* "the implied warranty of merchantability does not 'impose a general requirement that goods precisely fulfill the expectation of the buyer. Instead it provides a minimum level of quality.'" (Citations omitted.) *American Suzuki* at 1296. The facts pled establish that the vehicles these two plaintiffs purchased greatly exceeded the test of providing a minimum level of quality. As a matter of law, the count for breach of the implied warranty of merchantability fails to state a claim upon which relief may be granted. It should be dismissed.

**B. THE BREACH OF IMPLIED WARRANTY CLAIM IS BARRED BY A LACK OF PRIVITY**

"Privity of contract is a prerequisite in California for recovery on a theory of breach of implied warranties of fitness and merchantability. The general rule is that … there is no privity between the original seller and a subsequent purchaser who is in no way a party to the original sale." *All West Electronics, Inc. v M-B-W, Inc.*, 64 Cal.App.4th 717, 724 (1998); *Arnold v. Dow Chemical Co.*, 91 Cal.App.4th 698, 720 (2001) ("*Arnold*"). Exceptions to the general rule have been recognized in the case of foodstuffs, drugs, and pesticides. *Arnold v. Dow Chemical Co.*, 91 Cal.App.4th 698, 720. No exception is applicable here.

Facts pled in the Complaint establish the privity requirement cannot be met here. Plaintiff Morris purchased his BMW from Courtesy Motors, an authorized BMW dealership in Chico, California. (Complaint, ¶5.) Plaintiff Semow purchased his vehicle from Weatherford BMW, an authorized BMW dealership located in Emeryville, California. (Complaint, ¶ 6.) Because both plaintiffs concede they did not purchase their vehicles from defendant BMWNA, there is no privity. On this separate and additional basis, the third court should be dismissed.

## V. CONCLUSION

Plaintiffs have not pled and cannot plead claims for violation of the UCL, CLRA or for breach of the implied warranty of merchantability. Accordingly, the court should dismiss each count and the complaint in its entirety.

July 17, 2007                    LEWIS BRISBOIS BISGAARD & SMITH LLP


By: _____
ROY M. BRISBOIS
JON KARDASSAKIS
Attorneys for Defendant
BMW of North America, LLC

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

4837-5632-5889.1                    14                    C 07-02827 WHA
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT