1  KEMNITZER, ANDERSON, BARRON, OGILVIE & BREWER, LLP
   Mark F. Anderson (SBN 44787)
2  445 Bush Street, 6th Floor
   San Francisco, CA 94108
3  Telephone: (415) 861-2265
   Facsimile: (415) 861-3151
4
   (Additional counsel appear on signature page)
5
   **Attorneys for Plaintiffs**
6
              **IN THE UNITED STATES DISTRICT COURT**
7           **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

8  KEVIN MORRIS, GLENN R.              :
   SEMOW and CHAD J. COOK, On Behalf   :    CIVIL ACTION NO. C 07 2827 WHA
9  of Themselves and All Others        :
   Similarly Situated,                 :
10                                     :
              Plaintiffs,              :    CLASS ACTION
11                                     :
                                       :
12        vs.                          :
                                       :
13 BMW OF NORTH AMERICA, LLC           :
                                       :
14            Defendant.               :    JURY TRIAL DEMANDED

15              **FIRST AMENDED COMPLAINT**

16        Plaintiffs, Kevin Morris ("Morris"), Glenn R. Semow ("Semow") and Chad J. Cook

17 ("Cook")(collectively "Plaintiffs"), bring this action against Defendant, BMW of North America,

18 LLC ("BMW" or "Defendant"), on behalf of themselves and all others similarly situated, and

19 allege upon information and belief, except as to their own actions, the investigation of their

20 counsel, and the facts that are a matter of public record, as follows:

21                        **INTRODUCTION**

22        1.        Plaintiffs bring this action to obtain restitution, disgorgement, injunctive and other

23 relief individually and on behalf of the proposed classes defined below (the "Classes" or

24 collectively, the "Class").

25        2.        This action is brought to remedy violations of applicable law in connection with

26 Defendant's design, manufacture, marketing, distribution and/or sale of 2006 and 2007 BMW 3

27 series vehicles equipped with run-flat tires manufactured by Bridgestone Firestone North

28 American Tire, LLC ("Bridgestone")("subject vehicles"). The tires on the subject vehicles wear

1  unevenly and prematurely, resulting in an extremely rough ride and excessive and disruptive

2  noise from the tires.  In addition, the tires on the subject vehicles must be replaced prematurely --

3  in many cases after less than 10,000 miles, and very often after less than 20,000 miles.

4      3.    Plaintiffs assert claims individually and/or collectively under the Unfair

5  Competition Law ("UCL" or "Section 17200"), Business and Professional Code § 17200 *et seq*.,

6  the California Secret Warranty Act ("Secret Warranty Act"), Civil Code § 1795.90 *et seq*.,  the

7  Consumer Legal Remedies Act ("CLRA"), Civil Code § 1750 *et seq*. and the Song-Beverly Act,

8  Civil Code § 1790 *et seq*., on behalf of themselves and the Class.

9                          **THE PARTIES**

10     4.    Plaintiff, Morris, is and at all times relevant to this action has been, a resident of

11 Ross, California.  On or about August 4, 2005, Morris purchased a new 2006 BMW 330i (VIN

12 WBAVB33596KR79097), equipped with Bridgestone Turanza EL42 RFT run-flat tires

13 ("Turanza run-flat tires"), from Courtesy Motors, an authorized BMW dealership located in

14 Chico, California.

15     5.    Plaintiff, Semow, is and at all times relevant to this action has been, a resident of

16 Oakland, California.  On or about September 25, 2005, Semow purchased a new 2006 BMW

17 330i (VIN WBAVB335X6KS31426), equipped with Bridgestone Potenza RE050 run-flat tires

18 ("Potenza run-flat tires") from Weatherford BMW, an authorized BMW dealership located in

19 Emeryville, California.

20     6.    Plaintiff, Chad J. Cook, is and at all times relevant to this action has been, a

21 resident of Oceanside, California.  On or about December 21, 2005, Cook leased a new 2006

22 BMW 330i (VIN WBAVB33566PS12519) equipped with Turanza run-flat tires from Brecht

23 BMW, an authorized BMW dealership located in Escondido, California.

24     7.    Defendant, BMW, is a Delaware corporation with its principal place of business

25 in New Jersey.  BMW does business throughout California, including throughout this judicial

26 district.  BMW maintains a principal place of business in California, which is located in Ontario,

27 San Bernardino County, California.  Plaintiffs' Declarations, as required under Cal. Civ. Code §

28 1780(c), reflecting that BMW does business in this judicial district, including the county in

1  which this Court sits, are attached collectively as Exhibit "A."

2  ## JURISDICTION AND VENUE

3  8.    This action is brought to remedy Defendant's violations of state consumer

4  protection and related statutes based upon the design, manufacture, marketing, distribution

5  and/or sale of the subject vehicles.

6  9.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)

7  because the matter in controversy, upon information and belief, exceeds $5,000,000, exclusive of

8  interests and costs, and this matter is a class action in which certain class members are citizens of

9  states other than those of Defendant.

10  10.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because Defendant

11  does business in this district, Plaintiffs reside in this district, and a substantial part of the events

12  or omissions giving rise to Plaintiffs' claims occurred in this district.

13  ## APPLICABLE LAW

14  11.    California law applies to the claims asserted in this action.

15  ## CLASS ACTION ALLEGATIONS

16  12.    Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil

17  Procedure 23(a) and (b)(3), on behalf of themselves and the following Classes:

18  **Turanza Class**:

19  All current and former owners and lessees of 2006 and 2007 BMW
20  3 series vehicles equipped with Turanza EL42 RFT run-flat tires
     manufactured by Bridgestone and sold or leased in California
21  ("Turanza Class").

22  **Potenza Class**:

23  All current and former owners and lessees of 2006 and 2007 BMW
     3 series vehicles equipped with Potenza RE050 run-flat tires
24  manufactured by Bridgestone and sold or leased in California
     ("Potenza Class").

25  Excluded from the Classes are Defendant, as well as Defendant's affiliates, employees, officers

26  and directors, including franchised dealers, any person who has experienced physical injury as a

27  result of the defects at issue in this litigation and the Judge to whom this case is assigned.

28  Plaintiffs reserve the right to amend this Class definition if discovery and further investigation

1    reveals that the Class should be expanded or otherwise modified.

2        13.    The members of the Class are so numerous that joinder of all members would be

3    impracticable.  Plaintiffs reasonably estimate that there are thousands of Class members who

4    purchased the subject vehicles.  The members of the Class are readily identifiable from

5    information and records in Defendant's possession, custody or control.  The disposition of these

6    claims will provide substantial benefits to the Class.

7        14.    There are questions of law and fact common to the members of the Class that

8    predominate over any questions affecting only individual Class members, including, but not

9    limited to, the following:

10            a.    Whether Defendant omitted and/or concealed material facts from Plaintiffs

11    and the Class regarding the defective Turanza run-flat tires and Potenza run-flat tires

12    (collectively, "run-flat tires");

13            b.    Whether, by the misconduct set forth in this Complaint, Defendant has

14    engaged in unfair or unlawful business practices with respect to the sale of the subject vehicles;

15            c.    Whether Defendant had a duty to disclose the defect to Plaintiffs and the

16    Class;

17            d.    Whether, by its conduct, Defendant violated the UCL;

18            e.    Whether, by its conduct, Defendant violated the CLRA;

19            f.    Whether, by its conduct, Defendant violated the Song-Beverly Act;

20            g.    Whether the run-flat tires are defective; and

21            h.    Whether, as a result of Defendant's misconduct, Plaintiffs and the Class

22    are entitled to equitable relief and/or other relief, and, if so, the nature of such relief.

23        15.    Plaintiffs' claims are typical of the claims of the members of the Class.  Plaintiffs

24    have no interests antagonistic to those of the Class and are not subject to any unique defenses.

25        16.    Plaintiffs will fairly and adequately protect the interests of all members of the

26    Class and have retained attorneys experienced in class action and complex litigation.

27        17.    A class action is superior to all other available methods for the fair and efficient

28    adjudication of this controversy for, *inter alia,* the following reasons:

1          a.    It is economically impractical for members of the Class to prosecute

2    individual actions;

3          b.    The Class is readily definable;

4          c.    Prosecution as a class action will eliminate the possibility of repetitious

5    litigation; and

6          d.    A class action will enable claims to be handled in an orderly and expeditious

7    manner.  A class action will save time and expense and will ensure uniformity of decisions.

8        18.    Plaintiffs do not anticipate any difficulty in the management of this litigation.

9        19.    Defendant has, or has access to, address information for the Class members,

10   which may be used for the purpose of providing notice of the pendency of this action.

11                 **SUBSTANTIVE ALLEGATIONS**

12       20.    This class action is brought on behalf of all current and former owners and lessees

13   of the subject vehicles sold or leased in California.

14       21.    The subject vehicles at issue are manufactured, marketed and sold by BMW

15   through its established network of licensed dealers and distributors.

16       22.    The Turanza and Potenza run-flat tires are manufactured by Bridgestone and,

17   pursuant to an agreement between the companies, are furnished by Bridgestone to BMW for the

18   express purpose of placing them on the subject vehicles prior to the distribution and sale of the

19   subject vehicles to the public.  The Turanza run-flat tires are placed on the majority of the

20   subject vehicles, while the Potenza run-flat tires are placed on certain versions of the subject

21   vehicles equipped with a "Sport" package.

22       23.    Prior to marketing and selling the subject vehicles to the Plaintiffs and members

23   of the Class, Defendant knew or should have known that the Turanza and Potenza run-flat tires

24   were defective, resulting in premature and uneven tire wear (including excessive noise),

25   requiring that the tires be replaced after being used, in many cases, less than 10,000 miles, and

26   very often after being used less than 20,000 miles, and that such wear was not consistent with the

27   reasonable expectations of consumers regarding tread wear on the subject vehicles.  In spite of

28   that knowledge, BMW placed the run-flat tires on the subject vehicles.  Vehicles used primarily

for personal use are typically driven between 12,000 and 15,000 miles a year. Thus, the tires on the subject vehicles typically last less than 18 months (and often less than 12 months) under normal driving conditions.

24.    Prior to marketing and selling the subject vehicles to Plaintiffs and members of the Class, Defendant knew or should have known that the need to replace the run-flat tires after as little as 10,000 to 20,000 miles (or less) was a material fact that should have been disclosed to the public.

25.    Prior to marketing and selling the subject vehicles to Plaintiffs and members of the Class, BMW, as the manufacturer of the subject vehicles, performed, or should have performed, testing on the Turanza and Potenza run-flat tires, to determine that the tires were subject to premature and uneven tire wear (and excessive noise).

26.    Notwithstanding its knowledge, BMW knowingly and purposefully failed to disclose to Plaintiffs and members of the Class that the run-flat tires had an unreasonably short life-span and would require far more frequent replacement than normal tires.

27.    Defendant's omissions are particularly egregious in light of the fact that the run-flat tires are appreciably more expensive than conventional tires and, thus, owners and lessees of the subject vehicles are not only required to replace the run-flat tires more frequently than anticipated, but they must also do so at extraordinary expense.

28.    Hundreds, if not thousands, of purchases and lessees of the subject vehicles have complained about premature tire wear and noise caused by the tires. As of August 28, 2007, Edmunds CarSpace, one of the leading Internet automotive forums, has received 1,292 messages from BMW 3-Series owners concerning the run-flat tires, nearly all of which are highly critical of the run-flat tires that came equipped on the subject vehicles. Illustrative examples include the following postings:

> • I can't stand the noise anymore!! I buckled and tomorrow am getting a new set of run flats after 25K miles on my 330i sport. The guy at the tire store said he has seen many irate BMW owners since the new 3 series came out. It's costing me about 1,260.00 out the door installed. ..my sanity is worth more than the tires. CarSpace Automotive Forums, posted 10/24/06.  http:/townhall-talk.edmunds.com/direct/view/.efcebo1/423

1

- I have a BMW 330i without the sport package and those horrible Bridgestone tires. I've gotten 27K out of these, but they have been loud, feathering and cupping since about 10k. *Id.* posted 10/9/06.

2

3

- Please, whatever you do…don't go with Bridgestone RFT's.  I replaced mine with Contis [Continental] and the difference is dramatic.  Numerous posts on this board agree with me…. *Id.* posted 10/9/06.

4

5

- Are they still delivering new cars with bad tires.  I can't believe it.  All this sounds like Law Suit material . The pain I went through on two sets of [B]ridgestones for a total of 18K miles is worth 1K DOLLARS for 18K miles.  Will settle for $18,000.  That is how bad it was.  *Id.* posted 8/2707.

6

7

- I just took my BMW in for service with 21000 miles stating it was very loud riding.  They explained that my run flats are due to be replaced.  The cost of replacing them is $995.  This is a crime, I am advising anyone who looks to purchase a car with these tires DO NOT DO IT.  They are loud, offer less mileage, cannot be plugged you must purchase new ones. …(Owned 7 [BMW cars] and now done).  *Id.* posted 8/7/07.

8

9

10

- I just took my 06 to the BMW dealer with 21K miles on it and they told me the Bridgestone run flats need to be replaced…$995…the tires are terrible Turanza EL42 205/55R16 91H.  *Id.* posted 8/7/07.

11

12

- I had the same problem that I keep reading about throughout many of the posts here.  Very loud noise and my tires wearing out at around 15000 miles.  *Id.* posted 11/15/06.

13

14

- All I can say to everyone with noisy Bridgestone RFT's is to keep talking to your dealership.  They are getting one of us in their service bays every day and they are tired of telling us all to call BMW with no response.  *Id.* posted 11/13/06.

15

16

17

- I have been reading this post religiously due to my disgust with the Bridgestone RFT's that were OEM on my 2006 330xi (s/sport package). *Id.* posted 11/8/06.

18

19

- About 3 weeks ago I replaced my RFTs on my e90 330i with basic Kumho performance tires.  My RFTs are now in my garage rafters waiting to be slapped back on the car at lease end.  *Id.* posted 10/31/06.

20

21

- RFT's = garbage that compromise ride, handling and performance.  Many folks on bimmer boards have switched to Pilot Sports.  *Id.* posted 10/31/06.

22

23

- I have the Bridgestone Turanaza EL42 RFT on my 2006 BMW 325i with 26,000 miles….I feel like I'm in the "Flintstones car with Barney and Fred."  *Id.* posted 10/9/06.

24

25

- RFT on my 325i becoming bald at 9,000 miles …  *Id.* posted 10/6/06.

26

27

28

- I just got off the phone with BMWUSA and the guy was rude and said there was no known problem with the runflat tires. ….My car sounds like an 18 wheeler, in fact I was on the phone with the rep from BMW he said he was having a tough time hearing me…I explained to him that I was in the car and the sound drowning me out were the tires.  HELP!  *Id.* posted 9/24/06.

- What a TERRIBLE decision by BMW.  [The tires] don't get the performance a regular tire does, they cost more, have that tramline feeling….[a]t least they could have provided the space in the trunk for the small spare, if the owner WANTED to switch over to regular tires.  *Id.* posted 8/4/06.

- [T]he tires are horrible! ….[F]irst noticed the problem at 9,600 miles….contacted my dealer and was told …I probably needed "new" tires.  *Id.* posted 7/12/06.

29.     After receiving numerous complaints from owners of the subject vehicles, BMW, in January 2007, issued a Technical Service Bulletin No. SI B 36 06 06 ("TSB"), acknowledging that the irregular and premature tire wear and attendant loud noise was occurring, often at less than 10,000 miles.

30.     Upon information and belief, although the TSB did not expressly reference the Potenza run-flat tires, those tires, likewise, are suffering from the same premature and uneven tire wear and attendant noise.

31.     The TSB issued by BMW constitutes a secret warranty adjustment program pursuant to which BMW, with respect to the subject vehicles equipped with the Turanza run-flat tires, now (a) automatically pays for full replacement of tires (including 100% of labor) experiencing premature and/or irregular tire wear prior to 10,000 miles and (b) automatically pays for fifty percent (50%) of the replacement of tires (including 100% of labor) experiencing premature and/or irregular tire wear prior to 20,000 miles.  BMW, however, has failed and refused to notify customers, including Plaintiff Morris, regarding the existence of the secret warranty program in the manner required by the Secret Warranty Act.

32.     The secret warranty program offers to pay for all or part of the cost of repairing a condition in the subject vehicles that may substantially affect the vehicles' durability, reliability and/or performance and does not amount to ad hoc adjustments on a case-by-case basis but, instead, constitutes a formal program or policy to cover certain repairs under the subject

1    vehicles' warranty for members of the Turanza Class.

2        33.    Although the TSB purports to address certain issues raised by the premature and

3    irregular tire wear issues, BMW failed and refused to notify owners and lessees of the subject

4    vehicles equipped with the Turanza run-flat tires as to the existence of the program as required

5    by the Secret Warranty Act.  Moreover, BMW has failed and refused to establish a procedure to

6    reimburse consumers who are eligible under the adjustment program and who incur expenses for

7    repairs of a condition (*i.e.*, replacement of tires) prior to acquiring knowledge of the adjustment

8    program.

9        34.    In addition to BMW's failure to comply with the requirements of the Secret

10   Warranty Act, the TSB itself does not provide an adequate remedy for Class members who,

11   according to the terms of the TSB, are still required to pay for fifty percent (50%) of the cost of

12   the replacement tires if they experience premature and/or irregular tire wear between 10,000

13   miles and 20,000 miles.  Moreover, the TSB does not extend to the Potenza tires, which are also

14   wearing prematurely and irregularly at an unacceptable rate and which, in all material respects,

15   are identical to the Turanza tires.

16       35.    Plaintiffs and members of the Class reasonably expected that the tires placed on

17   the subject vehicles by BMW would last for a commercially reasonable period of time, including

18   well in excess of 20,000 miles.  Plaintiffs and the Class members further reasonably expected

19   that the tires on the subject vehicles would not require frequent and extensive replacement (at a

20   significant cost) more frequently than, at a minimum, 40,000 to 50,000 miles.

21       36.    The fact that the tires on the subject vehicles are defective and wear prematurely

22   and irregularly, as described herein, was and is material to Plaintiffs and the Class members.

23       37.    If BMW had not misrepresented and concealed the material information regarding

24   the premature and irregular tire wear, Plaintiffs and Class members would not have purchased

25   the subject vehicles on the terms offered.

26       38.    BMW was in the exclusive possession of the information regarding the tire wear,

27   which was material to Plaintiffs and Class members, and BMW had a duty, under all of the

28   circumstances, to disclose the material facts to Plaintiffs and members of the Class.

39.     In light of Defendant's knowledge regarding the defects and problems detailed above, the provision of a limited warranty with respect to the subject vehicles and their tires, under all of these circumstances, constitutes an unlawful, unfair and fraudulent business practice, and, under all of the circumstances, the limited warranties accompanying the subject vehicles are unconscionable.

### Plaintiff Morris's Experiences With His BMW

40.     On or about August 4, 2005, Morris purchased a new 2006 BMW 330i equipped with Turanza run-flat tires from Courtesy Motors, an authorized BMW dealership located in Chico, California.  The purchase was made pursuant to a written contract of sale for Morris's personal use.

41.     At the time of the purchase, Defendant failed to disclose that the Turanza run-flat tires were defective and would experience premature and uneven tread wear (and attendant loud noise) requiring that the tires be replaced, often after being used for less than 10,000 miles.

42.     Following his purchase, Morris operated his vehicle in a manner consistent with its intended use.  On or about January 15, 2007, Morris took his vehicle to Sonnen BMW (his odometer read 15,416) because his tires were making excessive noise while he was driving his vehicle.  The dealer recommended that all four tires be replaced.  On March 27, 2007, Morris had all four tires replaced at Sonnen BMW.  He was required to pay for two of the replacement tires, at a total cost of $450.  Morris never received statutory notice of the TSB as required by the Secret Warranty Act and was not told that the reason for the reduction in price of the run-flat tires was and is because BMW had adopted a secret warranty adjustment program in light of its determination that the run-flat tires were and are defective.

### Plaintiff Semow's Experiences With His BMW

43.     On or about September 25, 2005, Semow purchased a new 2006 BMW 330i equipped with Potenza run-flat tires from Weatherford BMW, an authorized BMW dealership located in Emeryville, California.  The purchase was made pursuant to a written contract of sale for Semow's personal use.

1    44.    At the time of the purchase, Defendant failed to disclose that the Potenza run-flat

2    tires were defective and would experience premature and uneven tread wear requiring that the

3    tires be replaced, often after being used for less than 10,000 miles.

4    45.    Following his purchase, Semow operated his vehicle in a manner consistent with

5    its intended use.  On or about December 19, 2006, Semow took his vehicle to Weatherford

6    BMW and was informed that the rear tires were worn and would need to be replaced (even

7    though the vehicle had only been driven 16,214 miles).  The dealership informed Semow that it

8    would cost $1,000 to replace the two run-flat tires ($500 per tire).  Rather than pay $1,000 to

9    Weatherford BMW to replace the prematurely worn tires, Semow took his vehicle to an

10   independent repair facility, which replaced the two tires for $771.25 on December 23, 2006.  To

11   date, Semow has not received statutory notice of the TSB as required by the Secret Warranty

12   Act.

13   46.    Semow contacted BMW and placed the company on notice that he was required

14   to replace the prematurely worn tires at great cost to himself.  BMW refused to reimburse

15   Semow for the costs he was forced to incur in replacing the Potenza run-flat tires.

16   **Plaintiff Chad Cook's Experiences With His BMW**

17   47.    On or about December 21, 2005, Cook leased a new 2006 BMW 330i equipped

18   with Turanza run-flat tires from Brecht BMW, an authorized BMW dealership located in

19   Escondido, California.  The purchase was made pursuant to a written contract of sale for his

20   personal use.

21   48.    At the time of the purchase, Defendant failed to disclose that the Turanza run-flat

22   tires were defective and would experience premature and uneven tread wear (and attendant loud

23   noise) requiring that the tires be replaced, often after being used for less than 10,000 miles.

24   49.    Following his purchase, Cook operated his vehicle in a manner consistent with its

25   intended use.  On or about October 16, 2006, Cook took his BMW to the premises of an

26   authorized BMW dealer (his odometer read 17,127) at which time the dealer noted that "tires are

27   worn" and "uneven."  At that time, Cook declined to purchase new tires because of the cost of

28   the tires.  Cook was not informed at this time that the tires were defective.

50.    As described herein, in January 2007, BMW adopted an adjustment program within the meaning of the Secret Warranty Act.  BMW failed to provide statutory notice to Cook of the existence of the program's existence.  Had BMW provided Cook with notice, as required by law, upon receiving the notice, Cook would have taken his BMW to a BMW dealer to have his four tires replaced, with BMW paying for the labor and two of the four tires pursuant to the adjustment program.  The mileage on Cook's BMW did not exceed 20,000 miles until sometime after February 1, 2007, which is after BMW implemented the TSB.

51.    Not having received notice of the adjustment program, Cook purchased four new tires for his BMW from Discount Tire in Oceanside, California, on April 27, 2007, at a cost to him of $811.36.

**BMW's Express Warranty**

52.    BMW provides Plaintiffs and Class members with an express, written warranty covering 4 years or 50,000 miles, whichever comes first.  The warranty is a contract between Plaintiff and Class members, on the one hand, and BMW, on the other hand.  Although the subject vehicles are purchased through dealerships, BMW warrants the subject vehicles.

53.    Although BMW's express warranty purports to disclaim coverage for tires, BMW knew or should have known that the Turanza and Potenza run-flat tires it selected and placed on the subject vehicles prior to marketing and selling the subject vehicles to Plaintiffs and the Class were defective and would experience significant premature and uneven tread wear (and excessive noise), requiring that the tires be replaced after being used for, in many instances, less than 10,000 to 20,000 miles.  As such, BMW's attempt to disclaim any and all coverage for the run-flat tires, in the face of its knowledge and conduct, was unconscionable under all of the circumstances and should be deemed null and void.

54.    In connection with Plaintiffs' receipt of the warranty supplied by BMW, Plaintiffs lacked any meaningful choice with respect to the terms and/or limitations of the warranty because they lacked any knowledge regarding the defective nature of the Turanza and Potenza run-flat tires and, instead, only had available to them the information and representations supplied by BMW, which reasonably led them and other Class members to conclude that their

vehicles and the run-flat tires were of high and merchantable quality and none of which disclosed the defective nature of the run-flat tires.

55.    At the time that they purchased their vehicles, a complete and profound inequality of bargaining power existed between Plaintiffs and BMW, which resulted in the absence of any meaningful choice for Plaintiffs with respect to the terms of the warranty.

56.    The warranty supplied by BMW was part of a standardized form that was imposed and drafted by BMW, a party with superior knowledge, as well as bargaining strength and power, which only provided Plaintiffs with the opportunity to either reject the warranty and the vehicles, including the run-flat tires, or adhere to it.  The warranty was uniform and was supplied to Plaintiffs and all Class members on a "take it or leave it" basis.

57.    The object and attempted effect, both directly and indirectly, of BMW's warranty and the limitations contained therein was to exempt BMW from liability for its unfair, fraudulent and immoral conduct, as well as other violations of law and public policy, that resulted in injury to Plaintiffs and the Class.  As a result, the limited warranty, in addition to being unconsionable, was and is unlawful and void to the extent that it purports to limit BMW's liability for its misconduct complained of in this Complaint.

58.    In light of BMW's knowledge regarding the serious defect at issue that plagued the vehicles equipped with the Turanza and Potenza run-flat tires, the limitations contained in the warranty supplied by BMW (with respect to the duration and scope of the warranty and with respect to Defendant's obligations to effectively repair or replace the run-flat tires or refund purchasers for the prices paid) did not fall within the reasonable expectations of Plaintiffs and other members of the Class and also was unduly oppressive and unconscionable under all of the circumstances.  In sum, under all of the circumstances, BMW's limited warranty (which essentially purports to exclude the run-flat tires) did not meet the reasonable expectations of consumers, including Plaintiffs, and constitutes a harsh, one-sided and oppressive contractual provision which was and is both procedurally and substantively unconscionable.

59.    Plaintiffs and Class members have satisfied all obligations and preconditions necessary to qualify for warranty coverage.

1  60.    Although the secret warranty adjustment program effectively serves to extend and

2  expand the scope of certain Class members' warranty coverage (albeit inadequately under all of

3  the circumstances), BMW has failed and refused to provide statutory notice of the TSB as

4  required by the Secret Warranty Act and has engaged in affirmative conduct and has published,

5  or caused to be published, affirmative statements regarding the reasons for the price reductions

6  offered as part of the secret warranty adjustment program, including representations that such

7  price reductions are simply being offered to satisfy customers and/or to recognize the value of

8  customers, in order to conceal the fact that the reason for the reduction in price of the run-flat

9  tires was and is because BMW had adopted a secret warranty adjustment program in light of its

10  determination that the run-flat tires were and are defective.

**FIRST CAUSE OF ACTION**
**(Violations Of The UCL And Secret Warranty Act)**

13  61.    Plaintiffs reallege and incorporate the above allegations by reference as if set

14  forth fully herein.

15  62.    Plaintiffs bring this cause of action on behalf of themselves and on behalf of the

16  Class.

17  63.    Plaintiffs are and, at all pertinent times, were consumers within the meaning of

18  the Secret Warranty Act, Civil Code § 1795.90(a).

19  64.    Defendant BMW is, and at all pertinent times, was a manufacturer within the

20  meaning of the Secret Warranty Act, Civil Code § 1795.90(b).

21  65.    BMW adopted an adjustment program within the meaning of the Secret Warranty

22  Act, Civil Code § 1795.90(b), when it adopted and implemented said program through issuance

23  of the TSB in January 2007.

24  66.    BMW adopted the secret warranty program more than ninety (90) days prior to

25  the date that this action was initially commenced and, as reflected above, this adjustment

26  program addressed conditions that may substantially affect the subject vehicles' durability,

27  reliability or performance.

28

67.    Despite establishing the adjustment program identified above, BMW has failed and refused to notify Plaintiff Cook and Morris, as well as all other owners and lessees of the subject vehicles equipped with Turanza run-flat tires as to the existence of these programs as required by the Secret Warranty Act, and, upon information and belief, has no intention of so notifying owners and lessees of the subject vehicles.

68.    BMW has, likewise, failed and refused to establish a procedure to reimburse Plaintiffs Cook and Morris, as well as other consumers who incur expenses for repair of a condition (*i.e.*, replacement of tires) prior to acquiring knowledge of the adjustment program.

69.    By the foregoing conduct, BMW has failed to comply with the Secret Warranty Act.

70.    BMW's acts and  practices have deceived and/or are likely to deceive members of the consuming public and impact the public interest.

71.    BMW also has violated the UCL by failing and refusing to reimburse consumers, including Plaintiffs, for costs associated with premature tire wear as a result of the defects at issue.  The terms of the secret warranty adjustment program adopted by BMW with respect to the Turanza run-flat tires fail to provide appropriate relief to Plaintiffs and the Class under all of the circumstances.

72.    By failing to extend the TSB to the Potenza run-flat tires, and by failing to offer any remedy for the Potenza Class in connection with the premature and irregular tire wear described herein, BMW has engaged in unfair practices under Section 17200 and has violated the Secret Warranty Act because the condition which exists in the Potenza run-flat tires is the same in all material respects as the condition that exists in the Turanza run-flat tires.

73.    By requiring members of the Turanza Class to pay for certain costs incurred in replacing tires that wear premature and/or irregularly between 10,000 miles and 20,000 miles, including all costs incurred in replacing tires after 20,000 miles and before the expiration of a commercially reasonable period, and by requiring members of the Potenza Class to pay for all costs incurred in replacing tires that wear premature and/or irregularly and before the expiration of a commercially reasonable period, BMW has engaged in unfair practices under Section

17200.

74.    Plaintiffs have suffered injury in fact and loss of money as a result of BMW's conduct.  Plaintiffs have been required to pay for at least two tires as a result of BMW's acts and practices.  In addition, Plaintiffs Semow and Cook have been required to pay for labor costs associated with replacing the defective tires.  Furthermore, Plaintiffs also suffered injury in fact as a result of the diminished value of the subject vehicles.

75.    BMW has engaged in unfair, unlawful, and fraudulent business practices as set forth above.

76.    By engaging in the above-described acts and practices, BMW has committed one or more acts of unfair competition within the meaning of Section 17200.

77.    BMW's challenged policies and practices caused harm to Plaintiffs and members of the Class which outweighs any purported benefit to consumers or competition attributable to these policies and practices.  Moreover, in light of BMW's exclusive knowledge of the defect, the injury is not one that Plaintiff and Class members could have reasonably avoided.

78.    Defendant's acts and practices are unlawful because they violate Civil Code §§ 1572, 1709, 1710, 1750 *et seq.*, 1770 *et seq.*, 1790 *et seq.*, 1795.90 *et seq.*, and because they rise to the level of a breach of the implied warranty of merchantability.

79.    BMW's violations of Section 17200 and BMW's violation of the Secret Warranty Act continue to date and, absent a Court order, BMW will not comply with its obligations under Section 17200 and Civil Code § 1795.90 *et seq.*

80.    Plaintiffs, on their own and on behalf of all members of the Class, seek a court order requiring Defendant to immediately desist the above-described acts of unfair competition and for all further relief which is available, appropriate and just to grant, under the UCL and the Secret Warranty Act, including restitution, disgorgement, and attorneys' fees and costs pursuant to, *inter alia*, Cal. Code of Civ. Proc. § 1021.5.

1

2

## SECOND CAUSE OF ACTION
## (Violations Of The CLRA)

3      81.    Plaintiffs reallege and incorporate the above allegations by reference as if set

4  forth fully herein.

5      82.    Plaintiffs bring this cause of action on behalf of themselves and the Class.

6      83.    At all relevant times, Plaintiffs were each a "consumer," as that term is defined in

7  Civ. Code § 1761(d).

8      84.    At all relevant times, the subject vehicles constituted "goods," as that term is

9  defined in Civ. Code § 1761(a).

10     85.    At all relevant times, Defendant was a "person," as that term is defined in Civ.

11 Code § 1761(c).

12     86.    At all relevant times, Plaintiffs' purchases of the subject vehicles with the

13 Bridgestone run-flat tires constituted a "transaction," as that term is defined in Civ. Code §

14 1761(e).

15     87.    At all relevant times, BMW provided "services" to Plaintiffs and the Class, within

16 the meaning of Civil Code § 1761(b).

17     88.    The CLRA provides in relevant part that "[t]he following unfair methods of

18 competition and unfair or deceptive acts or practices undertaken by any person in a transaction

19 intended to result or which results in the sale or lease of goods or services to any consumer are

20 unlawful: (13) [m]aking false or misleading statements of fact concerning reasons for, existence

21 of, or amounts of price reductions," and (19) [i]nserting an unconsionable provision in [a]

22 contract." Civil Code §§ 1770(a)(13)&(19).

23     89.    At all pertinent times, BMW has made false and misleading statements of fact

24 regarding the reason for its reduction of the price of run-flat tires by failing and refusing to

25 disclose the existence of the secret warranty adjustment program at issue, by failing to disclose

26 that the price of certain run-flat tires effectively are being reduced by BMW for certain

27 customers in light of their defective nature and by representing that such price reduction are

28 simply being offered to satisfy customers and/or to recognize the value of customers without

1   disclosing the existence of the secret warranty adjustment program and the reasons for its

2   adoption.  By engaging in such conduct, BMW violated the CLRA.

3         90.    By excluding tires from coverage under the warranty provided with the subject

4   vehicles at a time when BMW knew or should have known that the run-flat tires were defective

5   and would need to be replaced frequently (often after less than 10,000 miles), Defendant violated

6   the CLRA by inserting an unconsionable provision in a contract with no warranty coverage for

7   the run-flat tires.

8         91.    Defendant's violations of the CLRA occurred as a result of common

9   misrepresentations, omissions and statements of facts that were material to Plaintiffs and to all

10  Class members, and upon which Plaintiffs and all Class members relied upon and/or reasonably

11  could be expected to rely upon under all of the circumstances.

12        92.    Civil Code § 1780(a)(2) permits any court of competent jurisdiction to enjoin

13  practices that violate Civil Code § 1770.

14        93.    Plaintiffs and the Class are also entitled to recover attorneys' fees and costs

15  pursuant to Civil Code §§ 1780 and 1781.

16        94.    Plaintiff and Class members, as described herein, have suffered damage and/or

17  injury in fact as a result of Defendants' violations of the CLRA.

18        95.    Under Civil Code § 1782(a), the required thirty (30) day notice was provided to

19  Defendant before the filing of the original Complaint pursuant to Civil Code § 1782(d), and

20  again when the original Complaint was filed.  In spite of these notices, BMW failed and refused

21  to take appropriate corrective action.

22        96.    Plaintiffs and the Class are entitled to damages, restitution, and other relief

23  pursuant to Civil Code § 1780.

24                           **THIRD CAUSE OF ACTION**
                  **(Violations Of The Song-Berverly Act - Implied Warranty)**

25

26        97.    Plaintiffs reallege and incorporate the preceding paragraphs as if fully set forth

27  herein.

28

*Kevin Morris, et al. v. BMW of North America, LLC*        FIRST AMENDED COMPLAINT        Page 18

1    98.    The subject vehicles are "consumer goods" as that term is defined by the Song-

2    Beverly Act.

3    99.    BMW is a "distributor" and "manufacturer" as those terms are defined by the

4    Song-Beverly Act.

5    100.    Plaintiffs are "buyers" as that term is defined by the Song-Beverly Act.

6    101.    At all pertinent times, BMW also was a merchant in the sale of the subject

7    vehicles to Plaintiffs and the Class members and, by operation of law, BMW provided Plaintiffs

8    and the Class members with an implied warranty of merchantability in the sale and lease of the

9    subject vehicles.

10    102.    During the manufacturing process, and prior to the placement of the run-flat tires

11    on the subject vehicles, as well as prior to marketing and selling the subject vehicles, BMW,

12    through testing or other means, knew or should have known that the Turanza and Potenza run-

13    flat tires were defective and subject to premature and uneven tire wear (and excessive noise).

14    103.    Plaintiffs' vehicles and the subject vehicles are not fit for the ordinary purposes

15    for which such automobiles are used, because the premature and uneven tire wear (and excessive

16    noise) at issue results in the occupants of the subject vehicles being forced to drive on

17    significantly impaired tires, or face the risk of having to do so, which does not meet with the

18    reasonable expectations of Plaintiffs or any other owners and lessees as to the manner in which

19    the subject vehicles should perform when used for their ordinary purposes, because the manner

20    in which the subject vehicles perform is so deficient and below a minimum level of quality so as

21    to render them unfit for their ordinary use and purpose.  Moreover, as a result of the premature

22    and uneven tire wear caused by the condition, the subject vehicles are not capable of providing

23    safe and reliable transportation since they are highly susceptible to suffering flat and failing tires

24    in light of the condition described herein.

25    104.    By the conduct described herein, including but not limited to, marketing and

26    selling the subject vehicles with the condition described in this Complaint, as well as by failing

27    to repair the subject vehicles by replacing the run-flat tires as needed, BMW breached the

28    implied warranty of merchantability.

1   105.    Plaintiffs and the Class members have been damaged as a result of BMW's

2   breach of the implied warranty of merchantability.

3   106.    Plaintiffs and Class members are entitled to all remedies available under the

4   Song-Beverly Act for breach of implied warranty, including those specified in Civil Code §

5   1794.

6   **PRAYER FOR RELIEF**

7   WHEREFORE, Plaintiffs, and members of the Class request that the Court enter an order

8   or judgment against Defendant as follows:

9   A.    Certifying the Class and appointing Plaintiffs as Class representatives and their

10  counsel as Class Counsel;

11  B.    Awarding all appropriate relief, including disgorgement, restitution and

12  injunctive relief, as determined by the Court to be appropriate and just under the UCL, Secret

13  Warranty Act and Song-Beverly Act, including under Business & Professions Code § 17203 and

14  Civil Code § 1795.92;

15  C.    For attorneys' fees and expenses and for costs of suit as provided for by

16  applicable law, including under Civil Code § 1794 and Cal. Code of Civ. Proc. § 1021.4;

17  D.    For pre-judgment and post-judgment interest as permitted under applicable law;

18  and

19  E.    For such other and further relief that Court deems just and proper.

20  **JURY DEMAND**

21  Plaintiffs demand a trial by jury on all causes of action so triable.

22  KEMNITZER, ANDERSON, BARRON,
    OGILVIE & BREWER, LLP

23

24  Dated: August 31, 2007          By:  /s/   Mark F. Anderson
                                          Mark F. Anderson (SBN 44787)
25                                        445 Bush Street, 6th Floor
                                          San Francisco, CA 94108
26                                        Telephone: (415) 861-2265
                                          Facsimile: (415) 861-3151
27

28

**Of Counsel**:

James E. Miller
Karen M. Leser (SBN 231189)
SHEPHERD,  FINKELMAN, MILLER
 & SHAH, LLC
65 Main Street
Chester, CT 06412
Telephone: (860) 526-1100
Facsimile: (860) 526-1120

James C. Shah
Nathan C. Zipperian
SHEPHERD,  FINKELMAN, MILLER
 & SHAH, LLC
35 East State Street
Media, PA 19063
Telephone: (610) 891-9880
Facsimile: (610) 891-9883

**Attorneys for Plaintiffs**