1  KEMNITZER, ANDERSON, BARRON, OGILVIE & BREWER LLP
   Mark F. Anderson (SBN 44787)
2  445 Bush Street, 6th Floor
   San Francisco, CA 94108
3  Telephone: (415) 861-2265
   Fax: (415) 861-3151
4  Email: mark@kabolaw.com

5  Additional Counsel are Listed on the Signature Page

6  Attorneys for Plaintiffs and all
7  others similarly situated

8
                 IN THE UNITED STATES DISTRICT COURT
9
                FOR THE NORTHERN DISTRICT OF CALIFORNIA
10
   Kevin Morris, et al. and all other persons similarly  )   Case No. C 07-02827 WHA
11 situated,                                              )
                                                          )   Class Action
12                               Plaintiffs,              )
                                                          )   PLAINTIFFS' MEMORANDUM
13 vs.                                                    )   IN OPPOSITION TO DEFENDANT
                                                          )   BMW OF NORTH AMERICA,
14 BMW of North America, LLC,                             )   LLC'S MOTION TO DISMISS
                                                          )
15           Defendant.                                   )   Hearing Date: November 1, 2007
                                                          )   Time: 8:00 A.M.
16                                                        )   Judge: Hon. William A. Alsup
                                                          )
17                                                        )

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF CONTENTS

2   TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

3   TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii-iv

4   I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

5   II.    STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

6   III.   LEGAL STANDARD APPLICABLE TO DEFENDANT'S MOTION . . . . . . . . . . . . 6

7   IV.    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

8
         A.   Plaintiffs Have Standing To Assert Their Claim Against
9             BMW For Violation Of The California Secret Warranty Statute . . . . . . . . . . . . 6

10       B.   Plaintiffs Have, Independent Of The Secret Warranty Act,
              Pled Violations Of The UCL By BMW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
11
              1.   Plaintiffs Have Adequately Pled That BMW's Conduct
12                 Was Fraudulent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

13            2.   Plaintiffs Have Adequately Pled That BMW's Conduct
                   Was Unfair . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
14
              3.   Plaintiffs Have Adequately Pled That BMW's Conduct
15                 Was Unlawful . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

16            4.   Plaintiffs Have Pled Their Fraud Based UCL Claims With
                   Sufficient Particularity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
17

18       C.   Plaintiffs Have Properly Pled Violations Of The CLRA . . . . . . . . . . . . . . . . 16

19            1.   Plaintiffs' Claims Are Pled With The Requisite Specificity . . . . . . . . . 17

20            2.   Plaintiffs Engaged In "Transactions" With BMW And,
                   Thus, Have Standing Under The CLRA . . . . . . . . . . . . . . . . . . . . . . . 17
21
              3.   The FAC Properly Pleads That Exclusion Of Tires From
22                 BMW's Express Warranty Is Unconscionable . . . . . . . . . . . . . . . . . . 19

23       D.   Plaintiffs Have Pled A Valid Claim For Breach Of
              Implied Warranty Under The Song-Beverly Act . . . . . . . . . . . . . . . . . . . . . . . 22
24
         E.   Plaintiffs' Song-Beverly Act Claims Are Not Barred By Any
25            Lack Of Privity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

26   V.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

27

28

1

**TABLE OF AUTHORITIES**

2

<u>Cases</u>

3

*A & M Produce Co. v. FMC Corp.,*
  135 Cal.App.3d 473 (1982) ................................................... 19

4

5

*All West Electronics, Inc. v. M-B-W, Inc.,*
  64 Cal.App.4th 717 (1998) ................................................... 24

6

*American Suzuki Motor Corp v. Superior Court,*
  37 Cal.4th 1291 (1995) ................................................. 23, 24

7

*Armendariz v. Foundation Health Psychcare Services, Inc.,*
  24 Cal.4th 83 (2000) ..................................................... 19, 20

8

9

*Arnold v. Dow Chemical Co.,*
  91 Cal.App.4th 698 (2001) ................................................... 24

10

*Atkinson v. Elk Corporation,*
  142 Cal.App.4th 212 (2006) ................................................. 24

11

12

*Bell Atlantic Corp. v. Twombly,*
  127Cal.App.4th. 1223 (2006) ................................................... 6

13

*Bonfield v. AAMCO Transmissions, Inc.,*
  708 F.Supp. 867 (N.D.Ill. 1989) .............................................. 15

14

15

*Cahill v Liberty Mut Ins Co,*
  80 F.3d 336 (9th Cir.1996) ................................................... 6

16

*California Consumer Health Care Council v. Kaiser Foundation Health Plan, Inc.,*
  142 Cal.App.4th 21 (2006) ................................................... 13

17

18

*Coast Plaza Doctors v. UHP Healthcare,*
  105 Cal.App.4th 693 (2002) ................................................. 10

19

*Conley v. Pacific Gas and Electric Co.,*
  131 Cal.App.4th 260 (2005) ................................................. 24

20

21

*Cuellar v. Ford Motor Co.,*
  296 Wis.2d 545, 723 N.W.2d 747 (Wis.App. 2006) .............................. 10

22

*Daugherty v. American Honda Motor Co., Inc.,*
  144 Cal.App.4th 824 (2006) ................................................. 12

23

24

*Day v. AT&T Corp.,*
  63 Cal.App.4th 325 (1998) ................................................. 10

25

*Discover Bank v. Superior Court,*
  36 Cal.4th 148 (2005) ..................................................... 20

26

27

*Falk v. General Motors Corporation,*
  496, F.Supp.2d 1088 (N.D.Cal. 2007) ....................................... 10

28

*Fireside Bank v. Superior Court,*
  40 Cal.4th 1069 (2007) .................................................... 8-9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Gusse v Damon Corp.,*
  470 F.Supp.2d 1110 (C.D.Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Gutierrez v. Autowest, Inc.,*
  114 Cal.App.4th 77 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Harper v. Ultimo,*
  113 Cal.App.4th 1402 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Isip v. Mercedes-Benz USA, LLC,*
  65 Cal.Rptr.3d 695 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

*Klein v. Earth Elements, Inc.,*
  59 Cal.App.4th 965 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*LiMandri v. Judkins,*
  52 Cal.App.4th 326 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-12

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Meyer v. Sprint Spectrum, LP,*
  150 Cal.App.4th 1136 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Miller v. Bank of America N.T. & S.A.,*
  2004 WL 2403580 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Nordberg v. Trilegiant Corp.,*
  445 F.Supp.2d 1082 (N.D.Cal.2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16-18

*Perdue v. Crocker National Bank,*
  38 Cal.3d 913 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Prata v. Superior Court,*
  91 Cal.App.4th 1128 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Quelimane Co., Inc. v. Stewart Title Guar. Co.,*
  19 Cal.4th 26 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Rennie & Laughlin, Inc. v. Chrysler Corp.,*
  242 F.2d 212 (9th Cir. 1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Robinson Helicopter Co. Inc. v. Dana,*
  34 Cal.4th 979 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Saunders v. Superior Court,*
  27 Cal.App.4th 832 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Scheur v. Rhodes,*
  416 U.S. 232, 236 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Schreidel v. Am Honda Motor Co., Inc.,*
  34 Cal.4th 1242 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Swedish Civil Aviation Admin. v. Project Mgmt. Enter. Inc.*,
  190 F.Supp.2d 785 (D.Md. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*U.S. Roofing, Inc. v. Credit Alliance Corporation*,
  228 Cal.App.3d 1431 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

*Vess v. Ciba-Geigy Corp., USA*,
  317 F.3d 1097 (9th Cir.2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14-16

*Walling v. Beverly Enters.*,
  476 F.2d 393 (9th Cir.1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Windham at Carmel Mountain Ranch Ass'n v. Superior Court*,
  109 Cal.App.4th 1162 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Zatkin v. Primuth*,
  551 F.Supp. 39 (S.D.Cal.1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**STATUTES**

Cal. Bus. & Prof. Code §§ 17200 *et seq* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Cal. Civ. Code § 1770 *et seq* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 16, 18, 22

Cal. Civ.Code § 1790 *et seq* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22-24

Cal. Civ.Code § 1795.92(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

**RULES**

F.R.C.P 8(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

F.R.C.P. 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14-17

**OTHER**

Black's Law Dictionary (5th ed. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Proposition 64 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 8, 23

3 Witkin, Summary of Cal. Law (9th ed. 1987) Sales, § 50 . . . . . . . . . . . . . . . . . . . 17

-iv-

1  **I.    INTRODUCTION**

2          Plaintiffs, Kevin Morris ("Morris"), Glenn R. Semow ("Semow"), and Chad J. Cook

3  ("Cook")(collectively "Plaintiffs"), filed this class action against Defendant, BMW of North

4  America, Inc. ("BMW"), on behalf of themselves and all other California residents who own

5  2006 and 2007 BMW 3 series cars ("Vehicles"), all of which came equipped with either

6  "Turanza" or "Potenza" run-flat tires manufactured by Bridgestone. The First Amended

7  Complaint ("FAC") alleges that the tires are all defective because they wear unevenly and

8  prematurely, resulting in Plaintiffs and other putative class members being required to replace

9  them at unreasonably low mileage, as well as being forced to endure an extremely rough ride and

10 excessive noise from the tires as they experience this premature and uneven wear.  (FAC, ¶ 2.)

11

12          BMW's express warranty does not cover the tires.  In January 2007, however, BMW

13 secretly began to extend its express warranty to cover, under certain circumstances, the Vehicles

14 equipped with Turanza tires.  (*Id.*, ¶¶ 29-31.)  Under the warranty extension, if an owner presents

15 a Vehicle to a BMW dealer with prematurely worn or uneven Turanza tires with less than 10,000

16 miles on the odometer, BMW will pay for four new tires and all required labor. (*Id.*) If the

17 Vehicle has between 10,000 miles and 20,000 miles, BMW will pay for two of the four tires and

18 all required labor.  (*Id.*)  BMW notified its dealers of this new warranty policy (referred to in the

19 automobile industry as an adjustment program or secret warranty) in writing, but it failed to

20 notify owners that the express warranty was being extended in this manner as required by Civil

21 Code § 1795.92(a) of the Motor Vehicle Warranty Adjustment Programs Act ("Secret Warranty

22

23 Act").  (*Id.*, ¶¶ 62-67.)   BMW also violated § 1795.92(d) by failing to implement a procedure for

24 reimbursing the Vehicle owners and lessees who previously paid for replacement of the Turanza

25 tires.  (*Id.*, ¶ 68.)  In this action, Plaintiffs seek, *inter alia*, an order from this Court directing

26 BMW to comply with the requirements of the Secret Warranty Act, as well as other relief under

27 the Unfair Competition Act, Business & Professions Code § 17200 ("UCL"), the Consumer

28 Legal Remedies Act ("CLRA"), Civil Code § 1750 *et seq.*, and the Song-Beverly Consumer

1   Warranty Act ("Song-Beverly Act"), Civil Code § 1790 *et seq.*[1]  BMW asserts that Plaintiffs do

2   not have standing under the UCL, through which the Secret Warranty Act is enforced, to

3   maintain their claims.  BMW's argument, as set forth below, fails as to each Plaintiff because,

4   not only do Plaintiffs have standing to assert UCL claims based on the Secret Warranty Act but,

5   in addition, they independently have standing to assert their claims under the unfair, fraudulent

6   and unlawful prongs of the UCL as a result of BMW's failure to disclose, and adequately

7   remedy, the known defect with the Vehicles' tires.[2]

8

9         Plaintiffs' second cause of action alleges that BMW violated the CLRA and, specifically,

10  Sections 1770(a)(13) and (19) of that statute, by making false and misleading statements

11  concerning the reason for its reduction in the price of the Turanza tires (i.e., the free replacement

12  tires) and by inserting an unconscionable provision into a contract (failing to provide warranty

13  coverage for the run-flat tires that BMW knew were defective). BMW seeks to dismiss these

14  claims on the purported basis that there was no "transaction" between it and Plaintiffs.  This

15  position, however, fails to acknowledge the existence and import of its express and implied

16  warranties, which agreements are the transactions upon which certain of Plaintiffs' claims are

17  based, as well as the fact that the false and misleading statements were made at the behest of

18  BMW by its dealers in their capacity as agents of Defendant.

19

20        Plaintiffs third cause of action asserts a claim for breach of implied warranty of

21  merchantability under the Song-Beverly Act, which, by operation of law, extends to the tires.

22  BMW seeks dismissal of this well-pled claim by erroneously seeking to apply the wrong standard

23

24        [1]Although BMW did not extend the warranty for the Vehicles equipped with the Potenza

25  tires, as set forth below, since the Potenza tires are equally prone to premature and uneven wear

26  and are identical in all material respects to the Turanza tires, BMW's failure was fundamentally
    unfair and violated the UCL.

27
          [2]BMW simply ignores the well-pled UCL claims of Plaintiffs, which are separate and
28  apart from the Secret Warranty Act claim arising under the UCL.

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT
BMW OF NORTH AMERICA, LLC'S MOTION TO DISMISS

-2-

1   to the claim and by importing a privity requirement that plainly does not exist under the Song-

2   Beverly Act. For the reasons explained below, BMW's Motion to Dismiss should be denied.

3   **II.     STATEMENT OF FACTS**

4          The Turanza and Potenza run-flat tires are manufactured by Bridgestone and, pursuant to

5   an agreement between the companies, are furnished by Bridgestone to BMW for the express

6   purpose of placing them on the Vehicles prior to the distribution and sale of the Vehicles to the

7   public. (FAC, ¶ 22.) Prior to marketing and selling the Vehicles to Plaintiffs and the consuming

8   public, BMW knew or should have known that the Turanza and Potenza run-flat tires were

9   defective, resulting in premature and uneven tire wear (including excessive noise), requiring that

10  the tires be replaced after being driven, in many cases, less than 10,000 miles, and very often less

11  than 20,000 miles, and that such wear was not consistent with the reasonable expectations of

12  consumers regarding tread wear. (*Id.*, ¶¶ 23-24.) The Vehicles are typically driven between

13  12,000 and 15,000 miles a year. (*Id.*) Thus, the tires typically last less than 18 months and often

14  less than 12 months under normal driving conditions. (*Id.*) These are material facts that BMW

15  should have disclosed and, in fact, had a duty to disclose, to the public. (*Id.*, ¶¶ 23-28, 35-38.)

16         BMW's failure to disclose the fact that the tires are defective and suffer from premature

17  and uneven tire wear is particularly egregious because the run-flat tires are appreciably more

18  expensive than conventional tires and, thus, owners and lessees of the Vehicles are not only

19  required to replace the run-flat tires more frequently than anticipated, but they must also do so at

20  extraordinary expense. (*Id.*, ¶ 27.) Hundreds, if not thousands, of purchasers and lessees of the

21  Vehicles have complained about premature tire wear and noise caused by the tires. (*Id.*, ¶ 28.)

22  As of August 28, 2007, Edmunds CarSpace, one of the leading Internet automotive forums, had

23  received 1,292 messages from Vehicle owners concerning the run flat tires, nearly all of which

24  are highly critical of the tires. (*Id.*) After receiving numerous complaints from owners of the

25  Vehicles, BMW, in January 2007, issued a Technical Service Bulletin No. SI B 36 06 06

1    ("TSB"), acknowledging that the irregular and premature tire wear and attendant loud noise was

2    occurring, often at less than 10,000 miles. (*Id.*, ¶ 29.)[3]  With respect to the Vehicles equipped

3    with the Turanza run-flat tires, BMW instituted a policy pursuant to which customers are entitled

4    automatically (a) to full replacement of tires (including 100% of labor) experiencing premature

5    and/or irregular tire wear prior to 10,000 miles, and (b) payment for fifty percent (50%) of the

6    replacement of tires (including 100% of labor) experiencing premature and/or irregular tire wear

7    prior to 20,000 miles. (*Id.*, ¶ 31.)  BMW, however, has failed and refused to notify customers,

8    including Plaintiffs, about the existence of the secret warranty program in the manner required by

9    the Secret Warranty Act and, furthermore, has refused to establish a procedure to reimburse

10    consumers who are eligible under the adjustment program and who incurred expenses for repairs

11    of a condition (*i.e.*, replacement of tires) prior to acquiring knowledge of the adjustment

12    program. (*Id.*, ¶¶ 31-33.)

13

14        In addition to BMW's failure to comply with the requirements of the Secret Warranty

15    Act, the TSB itself does not provide an adequate remedy for Vehicle owners and lessees with

16    Turanza tires who, according to the terms of the TSB, are still required to pay for fifty percent

17    (50%) of the cost of the replacement tires if they experience premature and/or irregular tire wear

18    between 10,000 miles and 20,000 miles and all labor and parts charges in excess of 20,000 miles.

19    (*Id.*, ¶¶ 34-36.)  Moreover, the TSB does not extend to the Potenza tires, which are also wearing

20    prematurely and irregularly at an unacceptable rate and which, in all material respects, are

21    identical to the Turanza tires. (*Id.*, ¶¶ 30, 34.)

22

23        Plaintiffs and other consumers reasonably expected that the tires placed on the Vehicles

24    by BMW would last for a commercially reasonable period of time, including well in excess of

25

26    _____

27        [3]Although the TSB did not expressly reference the Potenza run-flat tires, those tires,
     likewise, are suffering from the same premature and uneven tire wear and attendant noise. (FAC
28    ¶ 30).

1   20,000 miles. (*Id.*, ¶ 35.) Plaintiffs and consumers also reasonably expected that the tires on the

2   Vehicles would not require frequent and extensive replacement (at a significant cost) more

3   frequently than, at a minimum, 40,000 to 50,000 miles. (*Id.*) As such, the fact that the tires on

4   the Vehicles are defective and wear prematurely and irregularly, was and is material to Plaintiffs

5   and consumers. (*Id.*, ¶ 36.) If BMW had not misrepresented and concealed the material

6   information regarding the premature and irregular tire wear, Plaintiffs and consumers would not

7   have purchased the Vehicles on the terms offered. (*Id.*, ¶ 37.) BMW was in the exclusive

8   possession of the material information regarding the tire wear and, under all of the

9   circumstances, had a duty to disclose the material facts to Plaintiffs and consumers. (*Id.*, ¶ 38.)

10

11       The named Plaintiffs' experience with the tires on the Vehicles has been typical of those

12   experienced by other owners. Morris was required to replace all four of his Turanza tires in

13   March 2007 (at odometer reading 15,416) because the tires were making excessive noise. (*Id.*, ¶

14   42.) Morris had to pay for two of the replacement tires at a cost of $450. (*Id.*) Morris never

15   received statutory notice of the TSB as required by the Secret Warranty Act and was not told that

16   the reason BMW paid for two the tires was because they were defective and that BMW had

17   adopted and implemented a secret adjustment program. (*Id.*)

18       Cook similarly encountered premature wear on his Turanza tires. In October 2006, Cook

19   (at odometer reading 17,127) took his BMW to an authorized BMW dealership, where the dealer

20   noted that the "tires are worn" and "uneven" (*Id.*, ¶ 49.) At that time, Cook declined to purchase

21   new tires because of the excessive cost. (*Id.*) Cook was not informed that the tires were

22   defective. (*Id.*) Shortly thereafter, as set forth above, in January 2007, BMW adopted an

23   adjustment program within the meaning of the Secret Warranty Act. BMW failed to provide

24   Cook notice of the program's existence. (*Id.*, ¶ 50.) Had it complied with its legal obligation to

25   do so, Cook would have taken his vehicle to a dealership to have his four prematurely worn tires

26   replaced. (*Id.*) So long as it complied with the terms of its adjustment program, BMW would

27

28

1   have paid for the labor and two of the four tires as the mileage on Cook's vehicle did not exceed

2   20,000 miles until sometime after February 1, 2007, and BMW implemented the TSB in January.

3   (*Id.*) Not having received notice of the adjustment program, Cook purchased four new tires for

4   his BMW on April 27, 2007, at a cost of $811.36. (*Id.*, ¶ 51.)

5       Semow's Vehicle, equipped with Potenza tires, also experienced premature wear. After

6   only 16,214 miles, two of the tires were so worn that Semow had to replace them at a cost of

7   $771. (*Id.*, ¶ 45.)  BMW refused to reimburse Semow for the tires even though the Potenza tires

8   are the same as the Turanza tires in all material respects. (*Id.*, ¶¶ 45, 72.)

9

10  **III.    LEGAL STANDARD APPLICABLE TO DEFENDANT'S MOTION**

11      In order to survive a motion to dismiss, a complaint must simply state "enough facts to

12  state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 U.S.

13  1955, 1967-69 (2007).  In reviewing a 12(b)(6) motion, this Court must accept the factual

14  allegations of the complaint as true and must draw all reasonable inferences in favor of the

15  plaintiff." *Cahill v Liberty Mut Ins Co*, 80 F.3d 336, 340 (9th Cir.1996); *see also Scheur v.*

16  *Rhodes*, 416 U.S. 232, 236 (1974)(same).  The complaint need not set out the facts in exhaustive

17  detail; what is required is a "short and plain statement of the claim showing that the pleader is

18  entitled to relief." Fed.R.Civ.P. 8(a).  Here, as explained below, the claims asserted in Plaintiffs'

19  FAC are well-pled and there simply is no basis for dismissal of any of the claims.

20

21  **IV.    ARGUMENT**

22      BMW's arguments in support of dismissal are consistent in two respects -- they

23  persistently misconstrue the FAC and misstate the law.  In short, BMW's arguments do not have

24  merit and are not amenable to resolution on a motion to dismiss.

25      **A.    Plaintiffs Have Standing To Assert Their Claim Against**
         **BMW For Violation Of The California Secret Warranty Statute**

26

27      BMW first asserts that Plaintiffs do not have standing under Proposition 64 to sue for

28  violation of the Secret Warranty Act, purportedly because they did not lose money or property as

1    a result of BMW's failure to comply with the Act, is entirely without merit.

2           Cook clearly has standing because he lost money as a result of BMW's failure to notify

3    him of the adjustment program -- as was required under the Secret Warranty Act. The

4    adjustment program was announced to BMW dealers in January 2007. If BMW had provided

5    Cook with the requisite notice, Cook would have availed himself of the program. (FAC, ¶¶

6    49-50.) Indeed, prior to the implementation of the adjustment program, Cook was informed in

7    October 2006 (at odometer reading 17,127) by a BMW dealer that his tires were "worn" and

8    "uneven." (FAC, ¶ 49.) Due to the expense of the replacement, Cook elected to wait to replace

9    the tires. (*Id.*) If Cook had received notice in January 2007, when his vehicle still had less than

10   20,000 miles, he would have taken his vehicle in to have two tires replaced for free (with no

11   charge for labor), as provided for by the adjustment program. (*Id.*, ¶ 50.) In the absence of the

12   notice, Cook waited until April 2007 to replace all four tires at a cost to him of $811.36. (*Id.*, ¶

13   51.) Therefore, due to BMW's failure to comply with the Secret Warranty Act, Cook has lost at

14   least $405.68 and unquestionably has standing to pursue his claim. In addition, since Cook has

15   been forced to incur total expenses, to date, in excess of $800 as a result of the defective tires

16   BMW placed on his Vehicle, he unquestionably has standing to pursue his claim on that basis as

17   well.

18          Morris, likewise, has standing to assert his claim under the Secret Warranty Act. First,

19   like Cook, Morris has incurred $450 in expenses as a result of BMW's challenged conduct. (*Id.*,

20   ¶ 42.) Second, BMW acknowledges that it did not provide notice of the adjustment program to

21   Morris (or any consumer). Nevertheless, BMW argues that Morris does not have standing under

22   Proposition 64 to assert his UCL claim. But, Proposition 64 provides that one who "has suffered

23   injury in fact and has lost money or **property**" has standing to bring suit. (Emphasis added).

24   Although, by virtue of receiving two free tires, Morris arguably did not lose money in connection

25   with the claim for violation of the Secret Warranty Act under the UCL (which is separate and

1  distinct from Morris' other claims under the UCL for which he has identified monetary

2  damages), BMW still deprived him of property to which he was entitled under the Secret

3  Warranty Act -- that is, notice of the adjustment program. Proposition 64 is unambiguous in its

4  definition of property, which, on its face, is not limited to real property. Black's Law Dictionary

5  defines property broadly as follows:

6

7          That which is peculiar or proper to any person; that which belongs exclusively to
           one. **In the strict legal sense, an aggregate of rights which are guaranteed
8          and protected by the government.**

9  Black's Law Dictionary (5th ed. 1979)(emphasis added). Black's Law Dictionary also defines

10  intangible property as follows:

11          Property which cannot be touched because it has no physical existence such as
            **claims, interests, and rights.**
12

13  *Id.* (emphasis added). Since he did not receive notice as required under the Secret Warranty Act

14  -- a property right to which he was legally entitled -- Morris clearly lost property and has standing

15  to seek to require BMW to comply with its legal obligations under the Secret Warranty Act.[4]

16          This concept was recently confirmed by the California Supreme Court in *Fireside Bank v.*

17  *Superior Court*, 40 Cal.4th 1069, 1090 (2007), a case in which the defendant (a bank) had

18  repossessed the plaintiff's car and denied her the right to redeem the vehicle. In holding that a

19  named plaintiff in a class action need not be entitled to restitution to have standing to seek

20  injunctive relief and restitution on behalf of a class, the Court specifically held:

21          Gonzalez has standing. She, like other members of the putative class, was subjected
            to the same wrong: deprivation of a fair opportunity to redeem the financed vehicle,
22          followed by an unlawful demand for payment. The record demonstrates Fireside
            Bank repossessed Gonzalez's vehicle and pursued a deficiency judgment against her.
23          She thus has standing to seek a declaration that Fireside Bank is unlawfully asserting
24

25  _____

26          [4]*See also* Uncodified Text of Proposition 64 (Proposition 64 "was intended to impose on
    private persons suing under the unfair competition law, the injury-in-fact standing requirement of
27  the United States Constitution."). Proposition 64 § 1(e); *see also Lujan v. Defenders of Wildlife*,
    504 U.S. 555, 560, n.1 (1992)(a "particularized injury is an injury that affects the plaintiff in a
28  personal and individual way.").

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT
BMW OF NORTH AMERICA, LLC'S MOTION TO DISMISS

                                                                                    -8-

1    a debt against her, as well as an injunction against all further collection efforts.

2    *Id.* at 1090.[5]  Accordingly, Plaintiff Morris has standing to assert and pursue his claims under the

3    Secret Warranty Act.[6]

4        As note above, the FAC also clearly pleads that Morris lost money as a result of BMW's

5    acts, omissions and practices in violation of the UCL (independent of BMW's violations of the

6    Secret Warranty Act) because Morris was required to pay for two prematurely worn tires. (FAC,

7    ¶ 42.)[7]  In addition, as BMW ignores in its papers, the FAC specifically pleads that each of the

8    Plaintiffs also has suffered "injury in fact as a result of the diminished value of the subject

9    vehicles." (*Id.*, ¶ 74.)  Thus, in addition to suffering a loss of property as a result of BMW's

10   violation of his rights under the Secret Warranty Act, the FAC also clearly pleads that Morris lost

11   money as a result of BMW's violations of the UCL.

12

13       Finally, Semow was required to replace two of his Potenza tires (at odometer reading

14   16,214), at a cost of  $771, and pled that he suffered a diminished value in his Vehicle. (FAC, ¶¶

15   45, 74.)  Semow lost money as a result of BMW's failure to extend the adjustment to Vehicles

16

17

18   [5]BMW's reliance on *Meyer v. Sprint Spectrum, LP*, 150 Cal.App.4th 1136 (2007), is of
     no moment as that case many no longer be cited following the California Supreme Court's grant
19   of review on August 15, 2007. *See* 166 P.3d 1, 65 Cal.Rptr.3d 142.

20   [6]Cook, like Morris, has standing to pursue his claims on this basis as well, as he also did
21   not receive notice of the adjustment program under the Secret Warranty Act.

22   [7]The offer to charge a consumer only 50% of the cost of tires, which have a useful life of
23   less than 50% of a reasonable consumer's expectation as to the useful life of a tire, is an illusory
     offer of economic benefit since, in effect, the consumer already has been charged 100% price for
24   an item worth, at most, 50% of the expense (thereby suffering economic damage), and now is
25   simply being offered an opportunity to purchase a tire at an amount closer to its economic value
     (as opposed to being overcharged again in the same manner as was the case in the initial
26   transaction).  Such an economic analysis of the legal injury in fact suffered by the one Plaintiff
27   (Morris) who was offered some benefit (albeit an inadequate one) under BMW's Secret Warranty
     Act is useful in highlighting the inherent unfairness of the acts and omissions of BMW in this
28   case.

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT
BMW OF NORTH AMERICA, LLC'S MOTION TO DISMISS

1   equipped with the Potenza tires which, it was required to do, as the Potenza tires are also wearing

2   prematurely and unevenly at an unacceptable rate and are, in all material respects, identical to the

3   Turanza tires. (FAC, ¶ 34). Accordingly, Semow also has standing to assert claims under the

4   Secret Warranty Act. *See Cuellar v. Ford Motor Co.*, 296 Wis.2d 545, 723 N.W.2d 747

5   (Wis.App. 2006)(holding that, under Wisconsin's Secret Warranty Act, adjustment program was

6   applicable to all motor vehicles that were identical in all material respects).

7   
   **B.    Plaintiffs Have, Independent Of The Secret Warranty Act,**
8   **Pled Violations Of The UCL By BMW**

9       It is well settled that the UCL prohibits "unlawful," "fraudulent," or "unfair" business

10  practices. *Coast Plaza Doctors v. UHP Healthcare*, 105 Cal.App.4th 693, 699-700 (2002).

11  Here, the FAC adequately pleads that BMW's conduct violates each prong of the UCL.

12  
   **1.    Plaintiffs Have Adequately Pled That BMW's Conduct**
13  **Was Fraudulent**

14      To state a cause of action under the fraudulent prong of the UCL, Plaintiffs need only

15  demonstrate that the challenged conduct that presents the likelihood of public deception. *Prata*

16  *v. Superior Court*, 91 Cal.App.4th 1128, 1146 (2001). Here, the FAC specifically alleges that,

17  with respect to the Turanza and Potenza tires, BMW had a duty to disclose to Plaintiffs and

18  consumers that they were defective and, nevertheless, failed to disclose the defect. *See Falk v.*

19  *General Motors Corporation*, 496, F.Supp.2d 1088, 1098 (N.D.Cal. 2007)(allegations of failure

20  to disclose known defects stated a cause of action under the fraudulent prong of the UCL); *Day v.*

21  *AT&T Corp.*, 63 Cal.4th 325, 332-33 (1998)(failure to disclose relevant facts may be fraudulent

22  within the meaning of the UCL); *LiMandri v. Judkins*, 52 Cal.App.4th 326, 337

23  (1997)("*Judkins*")(enumerating circumstances which give rise to a duty to disclose).

25      Under the "second" *Judkins* factor, a failure to disclose can constitute actionable fraud

26  "when the defendant had exclusive knowledge of material facts not known to the plaintiff."

27  *LiMandri*, 52 Cal.App.4th at 337. With respect to BMW's conduct, Plaintiffs allege:

28

- BMW knew or should have known that the need to replace the run-flat tires after as little as 10,000 to 20,000 miles (or less) was a material fact that should have been disclosed to the public. (FAC, ¶ 24);

- Plaintiffs and members of the Class reasonably expected that the tires placed on the subject vehicles by BMW would last for a commercially reasonable period of time, including well in excess of 20,000 miles. Plaintiffs and members of the Class further reasonably expected that the tires on the subject vehicles would not require frequent and extensive replacement (at a significant cost) more frequently than, at a minimum, 40,000 to 50,000 miles. (*Id.*, ¶35);

- If BMW had not misrepresented and concealed the material information regarding the premature and irregular tire wear, Plaintiffs and Class members would not have purchased the subject vehicles on the terms offered. (*Id.*, ¶37); and

- BMW was in the exclusive possession of the information regarding the tire wear, which was material to Plaintiffs and Class members, and BMW had a duty, under all of the circumstances, to disclose the material facts to Plaintiffs and members of the Class. (*Id.*, ¶ 38.)

Furthermore, with respect to the reasonable expectations of consumers, the FAC sets forth a lengthy, representative sampling of Internet complaints from consumers expressing dismay over the premature wear and articulate their expectations that the Turanza and Potenza tires would have lasted for a significantly longer period of time. (*Id.*, ¶ 28; *see also* Section C(3) *infra*).

In sum, the FAC alleges that (1) BMW failed to disclose that the Turanza and Potenza tires were defective and prone to premature and uneven tire wear; (2) such facts were material to Plaintiffs and other consumers; (3) Plaintiffs and consumers reasonably expected that the tires would last for a significantly longer number of miles than the defect permitted; (4) Plaintiffs and consumers would have behaved differently had the concealed facts been made known to them; and (5) BMW had exclusive knowledge of the material facts. These allegations are more than sufficient to give rise to a duty to disclose and, thus, adequately state a claim under the fraudulent prong of the UCL.

The FAC also states a claim under the fraudulent prong of the UCL pursuant to the "third" *Judkins* factor, which gives rise to a claim where "the defendant actively conceals a material fact from the plaintiff." *LiMandri*, 52 Cal.App.4th at 327. Here, the FAC is replete

1   with allegations of concealment on the part of BMW. (*See, e.g.,* FAC, ¶¶ 31-33). Accordingly,

2   Plaintiffs have adequately pled a cause of action under the fraud prong of the UCL, which

3   remains actionable independent of their well-pled claims arising from BMW's violation of the

4   Secret Warranty Act.

5              **2.      Plaintiffs Have Adequately Pled That BMW's Conduct Was Unfair**

6          An "unfair" practice under the UCL is one "whose harm to the victim outweighs its

7   benefits." *Saunders v. Superior Court,* 27 Cal.App.4th 832, 839 (1994). To demonstrate that

8   conduct is unfair under the UCL, consumers need only show an alleged practice where "the

9   consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or

10  to competition, and is not an injury the consumers themselves could reasonably have avoided."

11  *Daugherty v. American Honda Motor Co., Inc.*, 144 Cal.App.4th 824 (2006).

12

13         As set forth above, with respect to the Turanza and Potenza tires, BMW knew of a

14  material defect and failed to disclose the defect to consumers, resulting in consumers sustaining

15  substantial economic damage. Similarly, with respect to BMW's failure to extend the adjustment

16  program to the Potenza tires, the FAC alleges that the conduct was unfair because the Potenza

17  and Turanza tires were identical in all material respects. (FAC, ¶¶ 30, 34.) Moreover, as set

18  forth above, the FAC alleges specific and detailed conduct regarding BMW's knowledge of the

19  defect, its duty to disclose the defect and its failure to do so.

20

21         Based on these facts, Plaintiffs easily satisfy the *Saunders* factors. First, the injury was

22  substantial. Being required to replaced run-flat tires, which are more expensive than

23  conventional tires, costs Plaintiffs and consumers hundreds and, in many instances, thousands of

24  dollars. Moreover, these costs will be incurred on an ongoing basis. Second, the injury to

25  consumers is not outweighed by any countervailing benefits to consumers or competition. As

26  alleged in the FAC, BMW knowingly sold and distributed the Vehicles with defective tires and

27  failed to disclose the defect to consumers. The only "benefit" of such conduct inures to BMW

28

1   itself, as it collects money from consumers who are forced to replace their Turanza and Potenza

2   run-flat tires much more frequently than they expected or than is commercially reasonable.

3   Third, class members have no way to avoid the injury -- other than to leave cars parked in their

4   driveways or garages.

5       BMW's reliance on *Klein v. Earth Elements, Inc.*, 59 Cal.App.4th 965 (1997), is, at best,

6   curious, since *Klein* actually supports Plaintiffs' position that the FAC adequately alleges unfair

7   conduct in violation of the UCL. In *Klein*, suit was brought against the defendant, a pet food

8   manufacturer, for distributing contaminated product. *Id.*, at 967. After it learned of the

9   contamination, the defendant promptly announced a recall campaign which was intentionally

10  over inclusive and, subsequently, extended the recall to additional product and issued a second

11  recall notice. *Id.* at 968. The defendant also sent press releases to print and broadcast media and

12  established a toll-free number for consumer inquiries. *Id.* Based on this conduct, the Court of

13  Appeal properly dismissed the UCL claim: "Clearly, [defendant's] conduct does not fit the

14  'unfairness' bill. While dogs did get sick, the company's act was *accidental* and once

15  discovered, it moved quickly to abate the harm." *Id.* at 970. (Emphasis in original.) The

16  proactive conduct in *Klein* stands in stark contrast to the actions and acts of concealment by

17  BMW in the face of its knowledge of the defective Vehicles and its concomitant obligations

18  under state consumer protection statues, including the Secret Warranty Act. Thus, rather than

19  supporting its position, *Klein* only highlights the unfair conduct of BMW in this case.

20

21

22      3.    **Plaintiffs Have Adequately Pled That BMW's Conduct Was Unlawful**

23      It is well settled that the unlawful prong of the UCL "borrows violations of other laws

24  and treats them as unlawful practices that the unfair competition law makes independently

25  actionable." *California Consumer Health Care Council v. Kaiser Foundation Health Plan, Inc.*,

26  142 Cal.App.4th 21, 27 (2006). As set forth herein, BMW's failure to provide notice to

27  consumers regarding the adjustment program, and an opportunity to obtain reimbursement of

28

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT
BMW OF NORTH AMERICA, LLC'S MOTION TO DISMISS

-13-

1   costs incurred, violates the Secret Warranty Act. Civil Code § 1795.92. Furthermore, BMW's

2   conduct, including its failure to disclose the defect to Plaintiffs and consumers gives rise to

3   violations of the CLRA and Song-Beverly Act (set forth more fully below). Accordingly,

4   BMW's conduct was unlawful and violated this prong of the UCL as well.

5           **4.    Plaintiffs Have Pled Their Fraud Based UCL Claims With
6                   Sufficient Particularity**

7           Apparently ignoring vast sections of the FAC, which articulate in great detail the fraud

8   perpetrated on Plaintiffs and other Vehicle owners as a result of BMW's failure to disclose the

9   defect, BMW desperately and unconvincingly asserts that the FAC does not satisfy Rule 9(b)'s

10  particularity requirement. In so arguing, BMW relies exclusively on *Vess v. Ciba-Geigy Corp.,*

11  *USA*, 317 F.3d 1097 (9th Cir.2003). This reliance is misplaced. Although the *Vess* Court held

12  that allegations sounding in fraud were required to meet the requirements of Rule 9(b), it also

13  specifically held that allegations on non-fraudulent conduct need only meet the requirements of

14  notice pleading. Moreover, the sufficiency of Plaintiffs' FAC is confirmed by the logic of

15
16  *Nordberg v. Trilegiant Corp.*, 445 F.Supp.2d 1082 (N.D.Cal.2006), where this Court specifically

17  held that Rule 9(b) is not strictly applicable to actions brought, as here, under consumer

18  protection statutes:

19          As noted by the court in *Vess*, "fraud is not an essential element of a claim under
20          [Cal. Civ.Code § 1770]." *Vess*, 317 F.3d at 1105. To require that plaintiffs prove
            more than the statute itself requires would undercut the intent of the legislature in
21          creating a remedy separate and apart from common-law fraud. Relief under the
            CLRA is available to those consumers who suffer "damage as a result of the use
22          or employment by any person of a method, act, or, practice declared to be
            unlawful under section 1770." Cal. Civ.Code § 1780(a). Thus, for a
23          misrepresentation to be actionable under section 1770 it need only "result" in
            damage to the consumer. In the present action, plaintiffs allege
24          misrepresentations pursuant to different subsections of CLRA's section 1770 and
            thus are not required to plead fraud with particularity but must merely demonstrate
25          that the misrepresentations resulted in harm.

26  *Id.* at 1097. The cogent reasoning in *Nordberg* is applicable to Plaintiffs UCL and CLRA claims.

27  As *Vess* itself acknowledges, "[f]raud is not an essential element of a claim under [the FAL, UCL

28

1  or CLRA]." *Vess*, 317 F.3d 1097 at 1105.[8]  In sum, since none of the consumer protection

2  statutes, which form the basis for Plaintiffs' claims require, by their terms, the pleading of fraud,

3  the imposition of pleading requirements of Rule 9(b) is plainly incorrect.  As the *Nordberg* Court

4  persuasively reasoned, the judicial imposition of such a requirement would "undercut the intent

5  of the legislature in creating a remedy separate and apart from common-law fraud." *Nordberg*,

6  445 F.Supp.2d at 1097.

7       It also is clear that, even if Rule 9(b) could be applied to certain of Plaintiffs' claims, it

8  could not properly be applied to those claims based upon actionable omissions.  As the Court

9  recognized in *Vess*, "[u]nder California law, the 'indispensable elements of a fraud claim include

10  a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and

11  damages.'" *Id.* (citations omitted.)  In *Vess*, as here, the plaintiff's claims were based, in part, on

12  omissions and, therefore, such claims cannot be considered to be grounded in fraud as they do

13  not depend on an "indispensable element of a fraud claim" -- a false representation. *Id.* at 108.

14  Rule 9(b)'s general requirements are necessarily less stringent when the plaintiff alleges, as here,

15  fraud by omission:  "Like Sherlock Holmes' dog that did not bark in the night, an actionable

16  omission obviously cannot be particularized as to 'the time, place and contents of the false

17  representations' or 'the identity of the person making the misrepresentation.'" *Bonfield v.*

18  *AAMCO Transmissions, Inc.*, 708 F.Supp. 867, 875 (N.D.Ill. 1989) (superseded by statute on

19  other grounds); *see also Swedish Civil Aviation Admin. v. Project Mgmt. Enter. Inc.*, 190

20  F.Supp.2d 785, 799 (D.Md. 2002) (denying motion to dismiss fraud claim; noting that "an

21  omission cannot be described in terms of the time, place, and contents of the misrepresentation or

22  the identity of the person making the misrepresentation.")

26  [8]*See also Quelimane Co., Inc. v. Stewart Title Guar. Co.* 19 Cal.4th 26, 46-47 (1998)
(California Supreme Court rejecting the argument that a UCL cause of action must be pled with
specificity, especially when the knowledge concerning the matter is within the purview of the
defendant).

1  Finally, to the extent that the FAC could be deemed to sound in fraud based on

2  misrepresentations, as opposed to omissions, and thereby implicate the requirements of Rule

3  9(b), the FAC clearly meets any such requirements.  "Under Ninth Circuit law, a pleading is

4  sufficient for purposes of Rule 9(b) if it identifies the circumstances constituting fraud so that the

5  defendant can prepare an adequate answer."  *Zatkin v. Primuth*, 551 F.Supp. 39, 42

6  (S.D.Cal.1982); *see also Walling v. Beverly Enters.*, 476 F.2d 393, 397 (9th Cir.1973)(requiring

7  "identification of the circumstances constituting fraud so that the defendant can prepare an

8  adequate answer from the allegations").  Here, BMW can hardly claim that the FAC's allegations

9  do not sufficiently place it on notice as to its alleged wrongdoing.  The FAC alleges, in great

10  detail, Plaintiffs' claims and explains why they believe that BMW's conduct violated applicable

11  law.  (FAC, ¶¶ 22-39; 52-60.)  It is beyond cavil that BMW was placed on notice by the FAC as

12  to the allegations being leveled against it.  Accordingly, Plaintiffs have adequately pled their

13  claims.

14

15  **C.       Plaintiffs Have Properly Pled Violations Of The CLRA**

16  The FAC alleges that BMW violated the CLRA by (1) "[m]aking false or misleading

17  statements of fact concerning reasons for, existence of, or amounts of price reductions," and (2)

18  "[i]nserting an unconsionable provision in [a] contract."  Civil Code §§ 1770(a)(13) & (19).

19  Specifically, the FAC alleges as follows:

20

21  •  At all pertinent times, BMW has made false and misleading statements of
   fact regarding the reason for its reduction of the price of run-flat tires by
22  failing and refusing to disclose the existence of the secret warranty
   adjustment program at issue, by failing to disclose that the price of certain
23  run-flat tires effectively are being reduced by BMW for certain customers
   in light of their defective nature and by representing that such price
24  reduction are simply being offered to satisfy customers and/or to recognize
   the value of customers without disclosing the existence of the secret
25  warranty adjustment program and the reasons for its adoption.  By
   engaging in such conduct, BMW violated the CLRA.  (FAC ¶89); and
26

27  •  By excluding tires from coverage under the warranty provided with the
   subject vehicles at a time when BMW knew or should have known that the
28  run-flat tires were defective and would need to be replaced frequently

(often after less than 10,000 miles), Defendant violated the CLRA by inserting an unconsionable provision in a contract with no warranty coverage for the run-flat tire. (FAC ¶90).

### 1.    Plaintiffs' Claims Are Pled With The Requisite Specificity

BMW first argues that the CLRA claims must be dismissed because they purportedly lack the specificity required by Rule 9(b). As set forth above, however, Rule 9(b)'s particularity requirements do not apply to Plaintiffs' CLRA claims, *Nordberg*, 445 F.Supp.2d at 1097, and, to the extent that the requirements of Rule 9(b) were imposed on the pleading of violations of the CLRA, as explained above, the FAC clearly meets any such requirements.

### 2.    Plaintiffs Engaged In "Transactions" With BMW And, Thus, Have Standing Under The CLRA

BMW next argues that Plaintiffs cannot sustain their CLRA claim because, purportedly, there was no "transaction" between Plaintiffs and BMW. In support of its position, BMW focuses solely on the allegations in the FAC that pertain to BMW's authorized dealerships. BMW, however, conveniently ignores the fact that each of the CLRA subsections at issue directly relate to the warranties, and the obligations flowing therefrom, which were provided to Plaintiffs and consumers by BMW itself. As such, BMW's argument is without merit.

The CLRA governs "transactions" which are defined as follows:

> an agreement between a consumer and any other person, whether or not the agreement is a contract enforceable by action, and includes the making of, and the performance pursuant to, that agreement.

Civil Code § 1761(e). In this regard, the FAC alleges that BMW provided Plaintiffs with a bumper to bumper 4 year, 50,000 mile express warranty, as well as implied warranty of merchantability (by operation of law). (FAC, ¶¶ 52, 101.) *See Windham at Carmel Mountain Ranch Ass'n v. Superior Court* 109 Cal.App.4th 1162, 1168 (2003), *quoting* 3 Witkin, Summary of Cal. Law (9th ed. 1987) Sales, § 50, (a warranty is defined as a contractual term concerning some aspect of the sale of goods). The FAC further alleges that, although the Vehicles are

purchased through dealerships, BMW itself warrants the Vehicles. (FAC, ¶ 52.) BMW also provided consumers who have the Turanza tires with a warranty extension, providing for, under certain circumstances, free tires and labor and an implied warranty of merchantability by operation of law. (FAC, ¶¶ 60, 66, 73). These warranties, and the conduct and representations involving the coverage, or lack thereof, relating to the warranties, give rise to Plaintiffs' claim under Civil Code § 1770(13). Accordingly, because the warranties were and are transactions between Plaintiffs (and consumers) and BMW itself, Plaintiffs have stated a claim under the CLRA.

BMW's reliance on *Nordberg, supra*, for the proposition that there was no transaction between it and Plaintiffs is misplaced. In *Nordberg*, plaintiffs alleged that defendants, without their knowledge, enrolled them in certain membership programs and, unbeknownst to plaintiffs, at the time of enrollment, charged them for the services. *Id.*, 445 F.Supp.2d at 1088. In concluding, based on these facts, that there was no "transaction" under the CLRA, the Court stated: "Absent an underlying agreement, the withdrawals of membership fees and their subsequent discovery by Nordberg and Smith are not actionable under the CLRA." *Id.* at 1096. Here, in stark contrast, the FAC alleges the existence of a specific underlying agreement between BMW and the Plaintiffs in the form of an express warranty. (FAC, ¶¶ 52-60.) Furthermore, unlike *Nordberg*, the FAC alleges acts and omissions in connection with the underlying agreement that specifically give rise to certain of Plaintiffs' claims. Accordingly, *Nordberg* is inapposite and does not support dismissal of Plaintiffs' CLRA claim.[9]

---

[9]The FAC also clearly pleads that, *inter alia*, the Vehicles were "marketed and sold by BMW through its established network of licensed dealers and distributors," (FAC, ¶ 21), and, when fairly read, the FAC clearly pleads that BMW thereby acted by and through these agents. (*See, e.g.*, FAC, ¶¶ 89-91.) Moreover, it bears noting that, if BMW's virtually unprecedented attempt to insulate itself from CLRA liability by effectively disclaiming any transactional relationship with its customers were accepted, manufacturers would be able to avoid liability for deceptive conduct purely on the basis of a claimed absence of privity of contract.

### 3.    The FAC Properly Pleads That Exclusion Of Tires From BMW's Express Warranty Is Unconscionable

Plaintiffs also can sustain their claim under section 1770(a)(19) of the CLRA, which prohibits companies from "[inserting] an unconscionable provision in [a consumer] contract." *See Miller v. Bank of America N.T. & S.A.*, 2004 WL 2403580 (2004)(under the CLRA it is illegal to propose and/or enter into an unconscionable contract). Under California law, to be invalidated, a contract provision must be shown to be both procedurally and substantively unconscionable. *A & M Produce Co. v. FMC Corp.*, 135 Cal.App.3d 473, 486 (1982). Although both the procedural element and the substantive element must be present before a provision can be deemed unenforceable, they need not be present to the same degree. *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.4th 83, 114 (2000). Thus, "[t]here is a sliding scale where the greater the evidence of procedural unconscionability, the less evidence is needed of substantive unconscionability." *Harper v. Ultimo*, 113 Cal.App.4th 1402, 1406 (2003). BMW does not challenge procedural unconscionability, but, rather, appears to assert that the challenged conduct was not substantively unconscionable. BMW's argument, for which it provides no legal authority, fails.

Plaintiffs' FAC asserts that, in connection with manufacturing, marketing and distributing the Vehicles to Plaintiffs and consumers, BMW selected run-flat tires that it knew or should have known would wear prematurely and require replacement in less than 10,000 miles, in many cases, and in less than 20,000 miles in most cases. (FAC ¶¶23-27, 90). As a result of its decision, Plaintiffs and other consumers suffered significant economic harm. (FAC ¶¶ 37, 42, 45, 41, 74). Ignoring, in their entirety, the allegations regarding its own knowledge, and its conscious decision to exclude tire wear from the express warranty in the face of that knowledge, BMW weakly argues that, absent an allegation of a safety concern with the tires, it is not unconscionable to exclude them from the terms of its express warranty. This argument is of little moment, however, as BMW does not, because it cannot, cite a single case which suggests that

the subject of a contract must be safety related to rise to the level of unconscionabilty. Indeed,

contract clauses involving basic substantive rights entirely unrelated to safety concerns are

routinely deemed to be unconscionable under California law. *See e.g., Discover Bank v.*

*Superior Court,* 36 Cal.4th 148 (2005)(waivers of class arbitration in consumer contracts are

unconscionable under certain circumstances); *Armendariz, supra* (contract requiring employees

to waive rights to redress discrimination claims in favor of arbitration is unconscionable).

In determining whether a contract term is substantively unconscionable, the California

Supreme Court has noted:

> Generally speaking, we explained there are two judicially imposed limitations on
> the enforcement of adhesion contracts or provisions thereof. The first is that such
> a contract or provision which does not fall within the reasonable expectations of
> the weaker or adhering party will not be enforced against him. The second - a
> principle of equity applicable to all contracts generally - is that a contract or
> provision, even if consistent with the reasonable expectations of the parties, will
> be denied enforcement if, considered in its context, it is unduly oppressive or
> unconscionable.

*Perdue v. Crocker National Bank,* 38 Cal.3d 913, 925 (1985); *see also Guiterrez v. Autowest,*

*Inc.,* 114 Cal.App.4th 77, 88 (2003)(substantive unconscionability "focuses on whether the

provision is overly harsh or one-sided and is shown if the disputed provision of the contract falls

outside the 'reasonable expectations' of the nondrafting party or is 'unduly oppressive.'").

Here, Plaintiffs allege that, when BMW purposefully excluded tire coverage from its

warranty, it knew that Plaintiffs' tires were defective and that the defect would cause the tires to

wear prematurely and require replacement, at significant cost, much sooner than Plaintiffs

reasonably anticipated. Thus, in order to dismiss Plaintiffs' claims, this Court would be required

to hold that Plaintiffs, in purchasing their vehicles, should reasonably expect that they, not the

manufacturer (BMW), would bear the risk of replacing  (at significant cost and on nearly an

annual basis), two to four tires on their Vehicles -- even though BMW had knowledge of the

defect, chose to conceal the defect and excluded coverage of the defect from its warranty.  Such a

scenario, far from falling within the reasonable expectations of Plaintiffs, or any member of the

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT
BMW OF NORTH AMERICA, LLC'S MOTION TO DISMISS

1    consuming public, is precisely the type of inequitable result -- being forced upon the consumer by

2    the party with the superior bargaining power and knowledge -- that the unconscionability

3    doctrine is designed to prevent. *See Robinson Helicopter Co. Inc. v. Dana,* 34 Cal.4th 979, 992-

4    993 (2004)("no rational party would enter into a contract anticipating that they are or will be lied

5    to"). This is confirmed, as alleged in the FAC, by owners and lessees of the Vehicles:

6
7
8
9    •    I can't stand the noise anymore!! I buckled and tomorrow am getting a new set of run flats after 25K miles on my 330i sport. The guy at the tire store said he has seen many irate BMW owners since the new 3 series came out. It's costing me about 1,260.00 out the door installed. ..my sanity is worth more than the tires. CarSpace Automotive Forums, posted 10/24/06. http:/townhall-talk.edmunds.com/direct/view/.efcebo1/423

10
11   •    Please, whatever you do...don't go with Bridgestone RFT's. I replaced mine with Contis [Continental] and the difference is dramatic. Numerous posts on this board agree with me.... *Id.* posted 10/9/06.

12
13   •    Are they still delivering new cars with bad tires. I can't believe it. All this sounds like Law Suit material . The pain I went through on two sets of [B]ridgestones for a total of 18K miles is worth 1K DOLLARS for 18K miles. Will settle for $18,000. That is how bad it was. *Id.* posted 8/2707.

14
15   •    I just took my BMW in for service with 21000 miles stating it was very loud riding. They explained that my run flats are due to be replaced. The cost of replacing them is $995. This is a crime, I am advising anyone who looks to purchase a car with these tires DO NOT DO IT. They are loud, offer less mileage, cannot be plugged you must purchase new ones. ...(Owned 7 [BMW cars] and now done). *Id.* posted 8/7/07.

16
17
18
19   •    I had the same problem that I keep reading about throughout many of the posts here. Very loud noise and my tires wearing out at around 15000 miles. *Id.* posted 11/15/06.

20
21   •    All I can say to everyone with noisy Bridgestone RFT's is to keep talking to your dealership. They are getting one of us in their service bays every day and they are tired of telling us all to call BMW with no response. *Id.* posted 11/13/06.

22
23   •    I have been reading this post religiously due to my disgust with the Bridgestone RFT's that were OEM on my 2006 330xi (s/sport package). *Id.* posted 11/8/06.

24
25   •    About 3 weeks ago I replaced my RFTs on my e90 330i with basic Kumho performance tires. My RFTs are now in my garage rafters waiting to be slapped back on the car at lease end. *Id.* posted 10/31/06.

26
27   •    RFT's = garbage that compromise ride, handling and performance. Many folks on bimmer boards have switched to Pilot Sports. *Id.* posted 10/31/06.

28

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT
BMW OF NORTH AMERICA, LLC'S MOTION TO DISMISS

-21-

1  •  RFT on my 325i becoming bald at 9,000 miles ... *Id.* posted 10/6/06.

2  •  I just got off the phone with BMWUSA and the guy was rude and said there was no known problem with the runflat tires. ....My car sounds like an 18 wheeler, in
3  fact I was on the phone with the rep from BMW he said he was having a tough time hearing me...I explained to him that I was in the car and the sound drowning
4  me out were the tires. HELP! *Id.* posted 9/24/06.

5  •  What a TERRIBLE decision by BMW. [The tires] don't get the performance a
6  regular tire does, they cost more, have that tramline feeling....[a]t least they could have provided the space in the trunk for the small spare, if the owner WANTED
7  to switch over to regular tires. *Id.* posted 8/4/06.

8  •  [T]he tires are horrible! ....[F]irst noticed the problem at 9,600 miles....contacted
9  my dealer and was told ...I probably needed "new" tires. *Id.* posted 7/12/06.

10  (FAC, ¶ 28). Accordingly, Plaintiffs have adequately stated a claim under Cal.Civ.Code §

11  1770(a)(19).

12  **D.    Plaintiffs Have Pled A Valid Claim For Breach Of**
     **Implied Warranty Under The Song-Beverly Act**
13

14      BMW admits, as it must, that an implied warranty of merchantability is a guarantee that a

15  vehicle will operate substantially free of defects and that it must be reliable. (Def's Brief at 5).

16  By operation of law, BMW provided buyers an implied warranty of merchantability on the entire

17  vehicle, including the tires. Under the Song-Beverly Act, an "implied warranty of

18  merchantability" implies that goods will be "fit for the ordinary purposes for which such goods

19  are used." Civil Code § 1791.1(a)(2). Here, the FAC alleges, *inter alia*, that the Turanza and

20  Potenza tires series run-flat tires cause vibration, wear unevenly, and wear prematurely, thereby

21  requiring frequent replacement of all four tires after as little as 10,000 to 20,000 miles or less.

22  (FAC ¶¶ 23-25). The FAC further alleges that, based on these significant defects, the tires are
23
24  not fit for their ordinary purpose. BMW, on the other hand, asserts that tires in such condition

25  are still fit for their ordinary purpose -- thus leaving a factual issue regarding whether or not the

26  defects constitute a substantial impairment -- an issue that is for a trier of fact. *See. Schreidel v.*

27  *Am Honda Motor Co., Inc.*, 34 Cal.4th 1242, 1250 (1995); *U.S. Roofing, Inc. v. Credit Alliance*

28

1  *Corporation*, 228 Cal.App.3d 1431, 1445 (1991).[10]

2      In seeking dismissal of Plaintiffs' Song-Beverly Act claims, BMW relies heavily on

3  *American Suzuki Motor Corp v. Superior Court*, 37 Cal.4th 1291 (1995), which, according to

4  BMW, stands for the proposition that the implied warranty provides on a "minimum level of

5  quality" and is breached only when the vehicle manifests a defect that is so basic it is renders the

6  vehicle unfit for its ordinary purpose of providing transportation." (Def's Brief at 5, 14-16). As

7  an initial matter, the FAC contains precisely such an allegation. (FAC ¶103). Furthermore, and

8  perhaps more importantly, *American Suzuki* is readily distinguishable and has been called into

9  serious question, if not been overruled.

10

11      Recently, in *Isip v. Mercedes-Benz USA, LLC*, 65 Cal.Rptr.3d 695 (2007), the Court of

12  Appeal reviewed *American Suzuki* and held that it does not correctly define the parameters of the

13  implied warranty of merchantability. In *Isip*, the trial court had rejected the defendant

14  manufacturer's request to instruct the jury that a vehicle is unfit for its ordinary use "only if the

15  vehicle manifests a defect that is so basic that it renders the vehicle unfit for its ordinary purpose

16  of providing transportation." Instead, the trial court presented plaintiff's proposed instruction

17  that a vehicle is fit for its ordinary use if it is "in safe condition and substantially free of defects."

18  In holding that the trial court's instruction was appropriate, the Court of Appeal held rejected the

19  constrained interpretation of the implied warranty of merchantability requested by BMW:

20

21      The instruction given by the trial court in this action fairly sets forth the principles
       in the above-cited authorities. Defining the warranty in terms of a vehicle that is
22      "in safe condition and substantially free of defects" is consistent with the notion
       that the vehicle is fit for the ordinary purpose for which a vehicle is used. On the
23      other hand, MBUSA's attempt to define a vehicle as unfit only if it does not
       provide transportation is an unjustified dilution of the implied warranty of
24      merchantability. We reject the notion that merely because a vehicle provides
       transportation from point A to point B, it necessarily does not violate the implied
25      warranty of merchantability. A vehicle that smells, lurches, clanks, and emits

26

27      _____

28      [10]*See also Rennie & Laughlin, Inc. v. Chrysler Corp.*, 242 F.2d 212 (9th Cir.
       1957)(factual questions cannot be resolved on a Rule 12(b)(6) motion).

smoke over an extended period of time is not fit for its intended purpose.

65 Cal.Rptr.3d at 699-700.[11]  In short, *American Suzuki* does not provide a basis to dismiss

Plaintiffs' third cause of action for breach of the implied warranty of merchantability.

**E.    Plaintiffs' Song-Beverly Act Claims Are Not Barred By Any Lack Of Privity**

BMW finally argues that Plaintiffs' Song-Beverly claim should be dismissed due to lack of privity.  BMW's argument is, at best, desperate, since it is well-settled that privity is not a necessary element of such a claim.[12]  The Song-Beverly Act abolished privity as a defense on the part of the manufacturer at the time of its enactment.  Civil Code § 1792 states that "every sale of consumer goods that are sold at retail in this state shall be accompanied by the manufacturer's …implied warranty that the goods are merchantable…."  Furthermore, Civil Code § 1794 provides the buyer with the right to sue for damages, including reimbursement of his or her purchase price based on any violation of the Song-Beverly Act.  This tenet was confirmed in *Gusse v Damon Corp.*, 470 F.Supp.2d 1110, 1116, n.9 (C.D.Cal. 2007), where the Court recognized that the plain language of the Song-Beverly Act abolished the privity requirement.[13]  Since the Song-Beverly Act abolished privity, BMW's argument that the implied warranty of merchantability claim should be dismissed on this basis cannot withstand careful scrutiny.

---

[11] The decision in *Isip* was not the first time that the reasoning of *American Suzuki* has been rejected.  *See Conley v. Pacific Gas and Electric Co.*, 131 Cal.App.4th 260, 268 (2005)("We agree that the decision in *American Suzuki* on which the trial court relied has been placed in serious question, if not overruled by [*Linder v Thrifty Oil Co.*, 23 Cal.4th 429 (2003)]").

[12]The two cases upon which BMW rely, *All West Electronics, Inc. v. M-B-W, Inc.*, 64 Cal.App.4th 717, 724 (1998) and *Arnold v. Dow Chemical Co.*, 91 Cal.App.4th 698, 720 (2001) are commercial code cases that have no application to this action.

[13]*See also Atkinson v. Elk Corporation,* 142 Cal.App.4th 212, 229 (2006)(rejecting a manufacturer's argument that plaintiff's claim based on breach of the implied warranty of merchantability was barred by the doctrine of privity under Magnuson-Moss Act).

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT
BMW OF NORTH AMERICA, LLC'S MOTION TO DISMISS

-24-

1    **V.     CONCLUSION**

2           For the foregoing reasons, Plaintiffs respectfully submit that BMW's Motion to Dismiss

3    be denied in its entirety.  To the extent that the Court concludes that one or more causes of action

4    should be dismissed, in part or in whole, Plaintiffs respectfully request the opportunity to replead

5    those causes of action to cure any defect identified in the pleading.

6    Dated: October 8, 2007                    Respectfully submitted,

7

8

9

10                                             Mark F Anderson (SBN 44787)
                                               Matthew Da Vega (SBN 195443)
11                                             KEMNITZER, ANDERSON, BARRON,
                                                  OGILVIE & BREWER LLP
12                                             445 Bush Street, 6th Floor
                                               San Francisco, CA  94108
13                                             Telephone:  (415) 861-2265
                                               Facsimile: (415) 861-3151
14                                             Email: mark@kabolaw.com
15                                             Email: matthew@kabolaw.com

16                                             James E. Miller
                                               Karen M. Leser (SBN 231189)
17                                             SHEPHERD, FINKELMAN, MILLER & SHAH, LLC
                                               65 Main Street
18                                             Chester, CT 06412
                                               Telephone: (860) 526-1100
19                                             Facsimile: (860) 526-1120
                                               Email: jmiller@sfmslaw.com
20                                             Email: kleser@sfmslaw.com

21                                             James C. Shah
22                                             Nathan C. Zipperian
                                               SHEPHERD, FINKELMAN, MILLER & SHAH, LLC
23                                             35 E. State Street
                                               Media, PA 19063
24                                             Telephone: (610) 891-9880
                                               Facsimile: (610) 891-9883
25                                             Email: jshah@sfmslaw.com

26                                             Attorneys for Plaintiffs

27

28

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT
BMW OF NORTH AMERICA, LLC'S MOTION TO DISMISS