LEWIS BRISBOIS BISGAARD & SMITH LLP
ROY M. BRISBOIS, SB# 53222
brisbois@lbbslaw.com
JON P. KARDASSAKIS, SB# 90602
kardassakis@lbbslaw.com
221 North Figueroa Street, Suite 1200
Los Angeles, California 90012
Telephone: 213.250.1800
Facsimile: 213.250.7900

Attorneys for Defendant,
BMW OF NORTH AMERICA, LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN MORRIS, GLENN R. SEMOW and CHAD J. COOK, On Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>BMW OF NORTH AMERICA, LLC,<br><br>Defendants. | CASE NO. C 07-02827 WHA<br><br>CLASS ACTION<br><br>REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS<br><br>Date : November 1, 2007<br>Time : 8:00 a.m.<br>Judge: William H. Alsup |

# TABLE OF CONTENTS

**Page**

1. PLAINTIFFS LACK STANDING TO MAINTAIN THE UCL CLAIM ....... 1

2. PLAINTIFFS HAVE NOT PLEAD VIOLATIONS OF THE UCL INDEPENDENT OF THEIR CLAIM THAT CIVIL CODE § 1795.90 WAS VIOLATED .................................................................................. 3

3. PLAINTIFFS DO NOT ALLEGE FACTS TO SHOW CLRA APPLIES HERE ...................................................................................... 6

4. THE FACTS PLEAD DO NOT SUBSTANTIVELY SUPPORT CLAIMS OF FALSE OR MISLEADING STATEMENTS OR UNCONSCIONABILITY UNDER CLRA ................................................ 7

5. THERE IS NO MERIT TO THE BREACH OF IMPLIED WARRANTY CLAIM ............................................................................. 9

6. CONCLUSION ....................................................................................... 13

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*A&M Produce Co. v FMC Corp.*
    135 Cal.App.3d 473 (1982) ................................................................................ 8

*American Suzuki Motor Corp. v. Superior Court*
    37 Cal.App.4th 1291 (1995) ................................................................. 9, 10, 11

*Bardin v. Daimler Corp.*
    136 Cal.App.4th 1255 (2006) ........................................................................ 3, 4

*Bell Atlantic Corp. v. Twombly*
    127 S. Ct. 1955, 167 LE.2d 929 (2000) ........................................................ 2, 5

*Conley v. Pacific Gas & Electric Co.*
    131 Cal.App.4th 260 (2005) ............................................................................ 11

*Daugherty v. American Honda Motor Co., Inc.*
    144 Cal.App.4th 824 (2006) .............................................................................. 3

*Falk v. General Motors Corp.*
    496 F.Supp.2d 1088 (N.D. Cal. 2007) ...................................................... 3, 4, 5

*Fireside Bank v. Superior Court*
    40 Cal.App.4th 1069 (2007) .............................................................................. 2

*Isip v. Mercedez-Benz U.S.A., L.L.C.,*
    155 Cal.App.4th 19 (September 12, 2007) ................................................ 10, 11

*Linder v. Thrifty Oil Co.*
    23 Cal.4th 429 (2003) ..................................................................................... 11

*Nordberg v. Triligiant Corp.*
    445 F.Supp.2d 1082 (N.D. Cal. 2006) .............................................................. 7

*Papasan v. Allain*
    478 U.S. 265, 286, 106 S. Ct. 2932, 92 LED2d 209 (1986) ............................. 2

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

*Vess v. Ciba-Geigy Corp. U.S.A.*
  317 F.3d 1097 (9th Cir. 2003) .................................................................. 5, 6, 8

*Windham at Carmel Mountain Ranch Ass'n v. Superior Court*
  109 Cal.App.4th 1162 (2003) ............................................................................ 7

**STATUTES**

Cal. Business & Professional Code
  § 17200, *et seq.* ................................................................................................ 1
  §17204 .............................................................................................................. 1

Cal. Civ. Code
  § 1761(e) ........................................................................................................... 6
  §1770, *et seq.* .................................................................................................. 1
  § 1770(a)(13) .................................................................................................... 6
  § 1791.1 ..................................................................................................... 11, 12
  § 1794, *et seq.* ................................................................................................. 1
  § 1795.90 .................................................................................................. 1, 3, 6

Cal. Code Civ. Procedure § 383 ............................................................................ 7

Cal. Commercial Code § 2314 ............................................................................ 11

**FEDERAL RULES OF CIVIL PROCEDURE**

Rule 9(b) .................................................................................................................. 1

Rule 12(b)(6) ....................................................................................................... 1, 2

The issues to be decided are whether plaintiffs' claims for violation of: (1) Cal. Business & Professional Code ("B&P") § 17200, *et. seq.* ("UCL"); (2) Cal. Civil Code §1770, *et. seq.* ("CLRA"); and/or (3) the Song-Beverly Act (Cal. Civil Code § 1794, *et. seq.*) should be dismissed pursuant to Rule 12(b)(6) and Rule 9(b).

**1.    PLAINTIFFS LACK STANDING TO MAINTAIN THE UCL CLAIM**

To have standing under B&P § 17204 a private party must have "suffered injury in fact and has lost money or property as a result of such unfair competition." Plaintiffs allege unfair competition because they claim BMW NA acted unlawfully by violating Cal. Civil Code § 1795.90. Plaintiffs allege BMW NA issued Technical Service Bulletin No. SI B 360606 ("TSB") which indicated full replacement value should be paid for Turanza tires experiencing premature and/or irregular tire wear prior to 10,000 miles and 50% should be paid for the replacement tires experiencing premature or irregular tire wear prior to 20,000 miles. (First Amended Complaint, "FAC", ¶ 31.) Plaintiffs contend this constituted an adjustment program within the meaning of Cal. Civil Code § 1795.90(b) and contend BMW NA violated §1795.90 by failing to give proper notice of the program.

As to plaintiff Morris, the Opposition concedes, "By virtue of receiving two free tires, Morris arguably did not lose money in connection with the claim for violation of the Secret Warranty Act under the UCL. . . ." Plaintiffs argue BMW NA deprived him of property because he did not get notice of the TSB. (Opp., 7:26-8:5). Plaintiffs' theory is that when a "right" (e.g., a "right" to receive notice of an adjustment program) is violated, the consumer "lost property" even though he lost nothing tangible and paid no money. Under plaintiffs' view, everyone who owned a BMW equipped with the Potenza tires, "lost property" because they were not given notice of the TSB, even if they experienced no problems with their tires whatsoever. This is not a plausible interpretation of B&P § 17204. Because

Morris neither lost money or property, his claim under UCL should be dismissed.

*Fireside Bank v. Superior Court,* 40 Cal.App.4th 1069, 1090 (2007), offers no support for plaintiffs' position. In *Fireside Bank*, as a result of having her car repossessed and having made a post repossession payment against the alleged deficiency, Gonzalez lost money or property. These plaintiffs make no similar factual allegations. Nor does the naked conclusion plead in ¶ 74 of the FAC that "plaintiffs have suffered injury in fact and loss of money as a result of BMW's conduct" (FAC, ¶ 74) suffice. As the Supreme Court recently explained in *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 167 LE.2d 929 (2000) ("*Twombly*"):

> When a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, (citations omitted), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, *see, Papasan v. Allain,* 478 U.S. 265, 286, 106 S. Ct. 2932, 92 LED2d 209 (1986) (on a motion to dismiss, courts, "are not bound to accept as true a legal conclusion couched as a factual allegation").

*Twombly*, 127 S. Ct. at 1964-65. Applying the rule from *Twombly* here, plaintiffs' conclusion that plaintiffs suffered "injury in fact as a result of the diminished value of the subject vehicles" (FAC, ¶ 74) adds nothing of substance. It does not pass *Twombly's* plausibility test to suggest that, if vehicles are sold with defective tires, as plaintiffs allege, they don't lose value because of the defective tires, but they lose value as a result of the purported statutory violation because the defendant did not tell the buyer about an alleged secret warranty program instituted more than a year later. The conclusion of a "diminished value of the subject vehicles" (FAC, ¶ 74) as a result of the alleged unfair competition is not supported by facts from

which this inference could be drawn.

Semow's BMW came with Potenza tires. (FAC ¶ 5). He did not even have the Turanza tires referred to in the TSB. A person whose vehicle did not have Turanza tires did not lose money or property as a result of not being told about a program that by its express terms only applied to Turanza tires. Accordingly, Semow neither lost money or property and he has no standing to maintain a UCL claim based on an alleged secret warranty program.

As to plaintiff Cook, the question is whether Cook "lost money or property" as a result of the alleged failure to provide notice to him of the purported adjustment program even though Cook did not purchase replacement tires until long after he drove well over 20,000 miles. Cook's vehicle "did not exceed 20,000 miles until sometime after February 1, 2007 . . ." (FAC, ¶ 50). Cook did not replace his tires until April 27, 2007. (FAC, ¶ 51). Cook did not lose money or property as a result of unfair competition when he declined to purchase new tires until after he had driven more than 20,000 miles.

## 2. PLAINTIFFS HAVE NOT PLEAD VIOLATIONS OF THE UCL INDEPENDENT OF THEIR CLAIM THAT CIVIL CODE § 1795.90 WAS VIOLATED

In support of their argument that the FAC adequately pleads fraudulent conduct to support a UCL claim, independent of the Civil Code § 1795.90 claim, plaintiffs cite this court's decision in *Falk v. General Motors Corp.*, 496 F.Supp.2d 1088, 1098 (N.D. Cal. 2007) ("*Falk*"). There are, however, significant differences between the allegations that were found to be sufficient in *Falk* and the allegations made here. In *Falk*, the court distinguished *Bardin v. Daimler Corp.*, 136 Cal.App.4th 1255 (2006) ("*Bardin*"), at least in part on the basis that in *Bardin*, "No safety allegations were alleged: the plaintiffs claimed only monetary damages." *Falk* at 1094. The court similarly distinguished *Daugherty v. American Honda Motor Co., Inc.*, 144 Cal.App.4th 824 (2006) ("*Daugherty*"), at least in part, on the

basis that "The plaintiffs alleged no safety concerns, apart from the cost of replacing damaged parts and engines." *Falk* at 1294. The false speedometer readings in *Falk* gave rise to significant safety concerns. Our case is more like *Bardin* and *Daugherty*. The allegations that the consumers must incur additional expenses because they have to replace tires earlier than they expected and/or and that the tires are noisy, raise no safety issues. There is no allegation anyone has ever suffered any injury or accident as a result of the tire problems plaintiffs allege.

*Falk* is also distinguishable because plaintiffs here are unable to unequivocally allege that BMW had actual knowledge of any purported defect in the tires at the time the vehicles were sold to plaintiffs. Here plaintiffs hedge their bet with language that BMW "knew <u>or should have known</u>." In *Falk*, "Plaintiffs rel[ied] on the tort proposition that GM <u>knowingly sold</u> vehicles with defective speedometers." *Falk* at 1091 (emphasis added). Plaintiffs alleged that "Defendant knew that its Trucks and speedometers were defectively designed or manufactured, would fail prematurely and were not suitable for their intended use." *Falk* at 1092-1093. Unequivocal allegations of actual knowledge of a defect, combined with the factual averment that the speedometer defect constituted a safety hazard, were significant factors supporting the court's decision to deny the motion to dismiss in *Falk*. See, *Falk* at 1097. Here, plaintiffs are unable to unequivocally allege BMW had actual knowledge of any purported defect at the time plaintiffs purchased their vehicles. Instead, plaintiffs allege "Prior to the marketing and selling of the vehicles to the Plaintiffs and members of the Class, Defendant knew <u>or should have known</u> that the Turanza and Potenza Run-flat Tires were defective. . . ." (FAC, ¶ 23). Similarly, plaintiffs make only the hedged averment that "Prior to marketing and selling the subject vehicles to Plaintiffs . . ., BMW, . . ., performed <u>or should have performed</u>, testing . . . to determine that the tires were subject to

premature and uneven tire wear (and excessive noise)." (FAC, ¶ 25)[1]. These "or should have known" and "or should have performed" allegations are materially different than the unequivocal positive averments of knowledge found to be sufficient in *Falk*. The difference between averments that "the defendant knew" and "the defendant knew or should have known" cannot be ignored. A defendant cannot violate a legal duty to disclose facts that it only "should have known" but did not, in fact, know. The "or should have known" averments undercut the basis for finding a duty to disclose. Absent a duty to disclose, the purported fraudulent omissions claims fail under both UCL and CLRA.

As the court recognized in *Falk*, "To state a claim for active concealment, a plaintiffs must plead the following five elements: . . . (2) the defendant must have been under a duty to disclose the fact to the plaintiff. . . ." *Falk* at 1097. Accordingly, the absence of an unconditional averment that the defendant had actual knowledge of the alleged defect is also fatal to plaintiffs' "active concealment" theory. Moreover, it does not pass *Twombly's* "plausibility test" to infer or assume that BMW NA marketed a vehicle with tires it actually knew at the time were defective. It is no answer for plaintiffs to say they can find all that out in discovery. As *Twombly* teaches, "A district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." (Citation omitted.) *Twombly* at 1967.

The opposition is also incorrect in arguing that a claim premised on fraud need not comply with Rule 9(b). See, *Vess v. Ciba-Geigy Corp. U.S.A.*, 317 F.3d 1097, 1103-04 (9th Cir. 2003) ("*Vess*"). Plaintiffs cannot blow both hot and cold here. To the extent they contend they plead a UCL claim based on fraudulent conduct, that is a claim grounded in fraud and Rule 9(b) requirements apply.

---

[1] The internet postings cited are dated October 2006 or later (FAC, ¶ 28) - long after these plaintiffs purchased their vehicles in 2005. (FAC, ¶¶ 4, 5 and 6).

"Averments of fraud must be accompanied by the 'the who, what, when, where, and how' of the misconduct charged." *Vess* at 1106. Because the FAC lacks this, it is deficient.

The Opposition also tries to argue plaintiffs alleged a UCL claim based on "unfair" practices. But this argument is based on plaintiffs' claim that the FAC alleges "BMW <u>knew</u> of a material defect and failed to disclose the defect to consumers . . ." (Opp., 12:13-15), and "BMW <u>knowingly</u> sold and distributed the Vehicles with defective tires. . . ." (Opp., 12:26). As discussed above, what the FAC actually pleads is that BMW knew or should have known. The "or should have known" averments hang plaintiffs' argument on its own petard. If plaintiffs have a good faith basis to allege actual knowledge, not "or should have known," they need to allege that to state a viable claim. For this same reason, plaintiffs also fail to plead a claim independent of Civil Code § 1795.90(b) under the "unlawful" prong of the UCL.

### 3. PLAINTIFFS DO NOT ALLEGE FACTS TO SHOW CLRA APPLIES HERE

Plaintiffs' theory is that CLRA was violated in two ways: (1) false or misleading statements of fact concerning reasons for existence of, or amounts of price reductions in violation of Civil Code § 1770(a)(13); and (2) inserting an unconscionable provision in a contract in violation of Civil Code § 1170(a)(19).

Preliminarily, plaintiffs must allege facts to show CLRA applies. That includes meeting the "transaction" requirement. The Opposition argues plaintiffs engaged in a "transaction" with BMW NA because BMW NA provided a 50,000 mile express warranty. (Opp., 17:22-24). The Opposition correctly cites Cal. Civ. Code § 1761(e) as providing a definition of "transaction," but fails to appreciate that the definition requires "an agreement" in order to have a transaction. Plaintiffs do not allege they ever communicated with BMW NA, much less entered into an "agreement" with this defendant.

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

Plaintiffs' efforts to distinguish *Nordberg v. Triligiant Corp.*, 445 F.Supp.2d 1082 (N.D. Cal. 2006) ("*Nordberg*") are unavailing. *Nordberg* found CLRA inapplicable to plaintiff Smith's claims specifically because there was no agreement between Smith and the defendants. *Nordberg* at 1097. Here plaintiffs do not allege they ever communicated with BMW NA at all. They do not allege they paid any money or otherwise gave any consideration to BMW NA. They reached agreements with independent dealers who sold vehicles to them. No facts are alleged to show any of the plaintiffs had an "agreement" or entered into a "transaction" with BMW NA.

Plaintiffs citation to *Windham at Carmel Mountain Ranch Ass'n v. Superior Court*, 109 Cal.App.4th 1162, 1168 (2003) ("*Windham*"), does nothing to support plaintiffs' theory that BMW NA was involved in a "transaction" with these plaintiffs. The court there held that on the basis of Cal. Code Civ. Procedure § 383, a homeowners association had standing to bring a construction defect suit alleging breach of implied warranty. No issue similar to that presented here was decided by the *Windham* court. Plaintiffs cite no support for their argument that a warranty accompanying the sale of a vehicle is sufficient to satisfy the "agreement" and "transaction" requirements of CLRA. The existence of an express written warranty does not fill the gap. In footnote 9, the Opposition asserts that as a result of the sales by BMW dealerships, BMW NA "acted by and through these agents" (citing to FAC, ¶¶ 89-91). (Opp., p. 18, fn. 9). Those cited paragraphs do not, however, allege that those independent dealers were acting as BMW NA's agents when they sold vehicles to these plaintiffs.

4. **THE FACTS PLEAD DO NOT SUBSTANTIVELY SUPPORT CLAIMS OF FALSE OR MISLEADING STATEMENTS OR UNCONSCIONABILITY UNDER CLRA**

In support of the claim that BMW NA violated CLRA by "[m]aking false or misleading statements of fact concerning reasons for, existence of, of amounts of

price reductions" (FAC,¶ 88), plaintiffs allege "BMW has made false and misleading statements of fact regarding the reason for its reduction of the price of run-flat tires by failing and refusing to disclose the existence of the secret warranty program at issue, by failing to disclose that the price of certain run-flat tires effectively are being reduced by BMW for certain customers in light of their defective nature and by representing that such price reductions are simply being offered to satisfy customers. . . ." (FAC, ¶ 89). This type of claim is grounded in fraud and is exactly the type of claim to which Rule 9(b) applies. *Vess* at 1103-04. The failure to allege who made the statements, when and precisely what was stated makes the claim deficient.

The Opposition concedes that in order for a provision in a contract to be unconscionable, it must be both procedurally and substantively unconscionable. *A&M Produce Co. v FMC Corp.*, 135 Cal.App.3d 473, 486 (1982) ("*A&M*"). The procedural element focuses on oppression and surprise. *A&M* at 486. "'Surprise' involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms." *A&M* at 486. Here plaintiffs make no allegation that BMW NA's refusal to warrant tire wear was in any way hidden in small print or otherwise a surprise to them. Indeed, <u>the FAC makes no allegation that any automobile manufacturer or distributor has ever warranted tire wear</u>. In the absence of an allegation that any other manufacturer or distributor warrants tire wear, plaintiffs could hardly be surprised that BMW NA does not warrant tire wear either.

As one commentator pointed out, ". . . unconscionability turns not only on a 'one-sided' result, but also on an absence of 'justification' for it." (Citation omitted.) *A&M* at 487. Tire wear is impacted by many factors, including how and where an individual drives, the conditions under which the vehicle is driven (including tire pressure and load carried), the vehicle's mechanical condition and even the climate. (See, http://www.tire-information-world.com/tire-

treadwear.html.) This unpredictability is good reason, or "justification," for automobile distributors to refrain from warranting the number of miles a tire can be driven before it will need to be replaced. It also makes more sense for a consumer to look to the tire manufacturer, rather than an automobile manufacturer or distributor, to provide any tire warranty. In sum, plaintiffs have not alleged facts to support a conclusion that there is an absence of "justification" for an automobile distributor to decline to warrant tire wear.

Nor can plaintiffs justify their position with their argument that "BMW had knowledge of the defect, chose to conceal the defect and excluded coverage of the defect from its warranty." (Opp., 20:26-27.) As discussed above, the FAC alleges that BMW "knew or should have known" (FAC, ¶ 24), not that BMW did, in fact, have knowledge. Parenthetically, plaintiffs' allegations that there were complaints about the tires on Edmunds Carspace offer no support for a claim that BMW had notice of a tire problem before the sales of the vehicles to these plaintiffs. The "illustrative examples" of postings alleged all have dates of October 2006 or later. (FAC, ¶ 28). These are all long after these plaintiffs purchased their vehicles in 2005. (FAC, ¶¶ 4, 5 and 6).

5. **THERE IS NO MERIT TO THE BREACH OF IMPLIED WARRANTY CLAIM**

In *American Suzuki Motor Corp. v. Superior Court*, 37 Cal.App.4th 1291 (1995) ("*American Suzuki*"), the court recognized, "the implied warranty of merchantability can be breached only if the vehicle manifests a defect that is so basic it renders the vehicle unfit for its ordinary purpose of providing transportation. (Citations omitted.)" *American Suzuki* at 1296. We obviously do not have that here as plaintiffs concede they each drove their vehicles more than a year and well in excess of 15,000 miles. The Opposition seeks to distinguish

1 *American Suzuki* on the basis of the recently decided *Isip v. Mercedez-Benz U.S.A., L.L.C.*, 155 Cal.App.4th 19 (September 12, 2007).[2] In *Isip*, the court rejected MBUSA's argument that the court erred in refusing to give a special jury instruction. The court instructed the jury substantially in accord with CACI No 3210 on a claim of breach of the implied warranty of merchantability under the Magnuson-Moss Warranty Act and the Song-Beverly Consumer Warranty Act and added, "fitness for the ordinary purpose of a vehicle means that the vehicle should be in safe condition and substantially free of defects." The trial court denied MBUSA's request to add to the instruction that "the implied warranty of merchantability does not impose a general requirement that goods precisely fulfill the expectations of the buyer; rather, it provides for a minimum level of quality which the law describes as being fit for the ordinary purposes for which such goods are used. In the case of automobiles, the implied warranty of merchantability can be breach only if the vehicle manifests a defect that is basic that it renders the vehicle unfit for its ordinary purpose of providing transportation." The Court of Appeal affirmed the judgment and concluded that "the discussion in *American Suzuki* does not support MBUSA's proposed jury instruction for two distinct reasons. First, unlike *American Suzuki,* which essentially was a case at the pleading stage, the instant case is before us after trial upon a set of facts supporting a finding that there was an implied breach of the warranty of merchantability. . . . Second, the language in *American Suzuki* which MBUSA drafted into its proposed jury instruction was a general discussion of the law, and was intended to be incorporated into a pattern jury instruction." *Isip* at 699. Our case, like *American Suzuki*, is at the pleading stage. And we are dealing

---

[2] *Isip* was decided by the Court of Appeal on September 12, 2007. It is unknown at this time whether there will be a petition for review filed with the California Supreme Court.

here not with the content of jury instructions, but what plaintiffs must allege in order to present a viable claim. The rule for evaluating the claim at the pleading stage remains as stated in *American Suzuki*. The Court of Appeal in *Isip* does recite, "We reject the notion that merely because a vehicle provides transportation from point A to point B, it necessarily does not violate the implied warranty of merchantability," (*Isip* at 700) based on its analysis that "A vehicles that smells, lurches, clanks, and emits smoke over an extended period of time is not fit for its intended purpose." (*Isip* at 700).[3] The claims plead here do not include allegations that the vehicles smelled, lurched, clanked, and emitted smoke over an extended period. To the contrary, everything about the complaint suggests the vehicles worked properly, save at some point (apparently after 15,000 miles) the tires become noisy and plaintiffs believe wore out too early. The facts plead do not support disregarding *American Suzuki* in this context.

Consumers in California can assert claims for breach of an implied warranty of merchantability under Cal. Commercial Code § 2314 or under Cal. Civil Code § 1791.1. Civil Code § 1791.1 provides that as used in that chapter, "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following: (1) Pass without objection in the trade under the contract description. (2) Are fit for the ordinary purposes for which such goods are used. (3) Are adequately contained, packaged

---

[3] The Opposition's pot shot at *American Suzuki* in footnote 11 is also questionable. It cites *Conley v. Pacific Gas & Electric Co.*, 131 Cal.App.4th 260, 268 (2005), as agreeing that *American Suzuki* has been placed in question. In *Conley*, the issue had to do with the appropriateness of certifying a class in connection with claims by employees seeking overtime pay. The criticism of *American Suzuki* had to do with the California Supreme Court's holding in *Linder v. Thrifty Oil Co.*, 23 Cal.4th 429 (2003), that class certification generally should not be conditioned upon a showing that class claims for relief are likely to prevail. *Conley* has nothing to do with what is required to plead a claim for breach of the implied warranty of merchantability.

and labeled. (4) Conform to the promises or affirmations of fact made on the container or label. Assuming for sake of analysis that the Opposition is correct that a claim under Civ. Code §1791.1 (which is part of the Song-Beverly Consumer Warranty Act) does not require privity and may be brought against a distributor, these plaintiffs do not allege facts to support a viable claim under that Act. Civ. Code § 1791.1(c) provides that the duration of the warranty protection available under the Song-Beverly Consumer Warranty Act is coextensive in duration with an express warranty "but in no event shall implied warranty have a duration of less than 60 days nor more than one year following the sale of new consumer goods to a retail buyer. . . ." Cal. Civ. Code § 1791.1(c). These plaintiffs do not allege their vehicles failed to pass without objection in the trade under the contract description or were not fit for the ordinary purposes for which such goods were used nor otherwise were unmerchantable as defined in Section 1791.1 within the one year period following the sale to each plaintiff. Morris purchased on or about August 4, 2005 (FAC, ¶ 5), but alleges no facts suggesting any problem until on or about January 15, 2007 (FAC, ¶ 42), after the one year Civil Code § 1791.1 warranty expired. The same is true for Semow who purchased on or about September 25, 2005 (FAC, ¶ 43), but alleges no problem until on or about December 19, 2006 (FAC, ¶ 45). Cook purchased on or about December 21, 2005 (FAC, ¶ 47). He does allege that within a year of the purchase, on or about October 16, 2006, a dealer noted his tires were worn and uneven, but they remained fit for the ordinary purposes for which the goods were used as evidenced by the fact that he continued to drive on those tires and did not replace them until on or about April 27, 2007. (FAC, ¶ 51).

///
///
///
///

## 6. CONCLUSION

For the reasons discussed above and in the moving papers, defendant BMW NA respectfully submits the court should dismiss the claims of each plaintiff.

DATED: October 18, 2007   Respectfully submitted,

LEWIS BRISBOIS BISGAARD & SMITH LLP

By: _____
Jon P. Kardassakis
Attorneys for Defendant,
BMW OF NORTH AMERICA, LLC

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 221 North Figueroa Street, Suite 1200, Los Angeles, California 90012.

On October 18, 2007, I served the following document(s) described as

**REPLY TO OPPOSITION TO MOTION TO DISMISS**

on all interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as follows:

**SEE ATTACHED SERVICE LIST**

☒    (BY MAIL, 1013a, 2015.5 C.C.P.)

☐    I deposited such envelope in the mail at Los Angeles, California. the envelope was mailed with postage thereon fully prepaid.

☒    I am readily familiar with the firm's practice for collection and processing of correspondence for mailing. Under that practice, this document will be deposited with the U.S. Postal Service on this date with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on October 18, 2007, at Los Angeles, California.

_____
CATHERINE M. GUERRERO

4843-8330-9313.1                                                                                                  C 07-02827 WHA

# SERVICE LIST

**Morris, et al. v. BMW of North America, LLC**
USDC Case NO. C 07-02827 WHA

Mark F. Anderson, Esq.
KEMNITZER, ANDERSON, BARRON & OGILVIE, LLP
445 Bush Street, 6th Floor
San Francisco, CA 94108
415/861-2265
FAX: 415/861-3151
**Attorneys for Plaintiffs**

James E. Miller, Esq.
Karen M. Leser, Esq.
SHEPHERD, FINKELMAN, MILLER & SHAH, LLC
65 Main Street
Chester, CT 06412
860-526-1100
FAX: 860-526-1120
**Attorneys for Plaintiffs**

James C. Shah, Esq.
Nathan C. Zipperian
SHEPHERD, FINKELMAN, MILLER & SHAH, LLC
35 East State Street
Media, PA 19063
610/891-9880
610/891-9883
**Attorneys for Plaintiffs**

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800