IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN MORRIS, GLENN R. SEMOW and CHAD J. COOK, On Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>BMW OF NORTH AMERICA, LLC,<br><br>Defendant. | No. C 07-02827 WHA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** |

**INTRODUCTION**

In this putative consumer class action against BMW of North America, plaintiffs Kevin Morris, Glenn R. Semow, and Chad J. Cook bring suit for defective "run-flat" tires on certain 2006 and 2007 BMW 3 Series automobiles, alleging violations of California's Unfair Competition Law, Secret Warranty Act, and Consumer Legal Remedies Act. Plaintiffs also allege that defendant breached its implied warranty of merchantability by selling a defective product. Defendant's motion to dismiss for failure to state a claim under Rules 12(b)(6) and 9(b) is **DENIED** as to plaintiff Cook's UCL claims for unlawful conduct based on violations of the Secret Warranty Act and unfair conduct, as well as plaintiffs' claims for breach of the implied warranty of merchantability. Defendant's motion is **GRANTED** as to plaintiffs' CLRA claims and the claims of plaintiffs Morris and Semow under the UCL.

**STATEMENT**

Plaintiffs are California residents who purchased new 2006 model year BMW 3 Series automobiles in 2005 and 2006. The vehicles owned by plaintiffs Morris and Cook were equipped with Bridgestone "Turanza" run-flat tires, while Plaintiff Semow's vehicle was equipped with Bridgestone "Potenza" run-flat tires (Compl. ¶¶ 4–6). A run-flat tire, as opposed to a conventional tire, is designed to resist deflation due to puncture and thus enable the vehicle to be driven for a limited distance at a reduced speed without changing the tire. The Turanza and Potenza run-flat tires were manufactured by Bridgestone Firestone North America Tire, LLC, and were provided to BMW expressly for placement on the 3 Series automobiles at issue in this suit. The majority of 3 Series automobiles were equipped with Turanza tires while certain "Sport" package versions of the cars are equipped with the Potenza tires (*id*. at ¶ 22).

The tires on each plaintiff's vehicle experienced significant premature and uneven tread wear and needed to be replaced. Plaintiff Morris bought a new 2006 BMW 330i equipped with Turanza run-flat tires in August 2005. In early 2007, after experiencing excessive noise while driving, he took his automobile which then had 15,416 miles on it to a dealer who indicated that all four tires needed to be replaced. The total cost of the replacement to Morris was $450 plus tax (*id*. at ¶¶ 40–42).

Plaintiff Semow purchased a new 2006 BMW 330i equipped with Potenza run-flat tires in September 2006. After taking his vehicle which then had 16,214 miles on it to a dealer, Semow was told that he would have to replace two tires at a cost of $500 apiece. He had the tires replaced by an independent repair facility for $771.25 in December 2006 (*id*. at ¶¶ 43–46).

Plaintiff Cook leased a new 2006 BMW 330i equipped with Turanza run-flat tires in December 2005. He took his vehicle which then had 17,127 miles on it to a dealer in October 2006. The dealer told Cook that the tires were worn and uneven but Cook declined to purchase new tires at that time. He later purchased four new tires in April 2007 at a cost of $811.36. At that time, the automobile had over 20,000 miles on it (*id*. at ¶¶ 47–51).

Tires were not covered by BMW's express warranty, but after receiving numerous complaints about premature and uneven wear on these run-flat tires, BMW issued Technical

1  Service Bulletin No. SI B 36 06 06 ("the TSB"). The TSB acknowledged that irregular and
2  premature tire wear were occurring, often at less than 10,000 miles. Plaintiffs allege that under
3  the TSB, BMW offered to pay the full cost of replacing Turanza but not Potenza tires
4  experiencing premature or irregular wear prior to 10,000 miles. BMW also offered to pay half
5  the cost of replacement for Turanza tires experiencing premature or irregular wear before
6  20,000 miles (*id*. at ¶¶ 29–31).

7  Plaintiffs assert that BMW violated the California Consumer Legal Remedies Act,
8  California Civil Code Section 1750, *et seq.* The CLRA makes unlawful "unfair methods of
9  competition and unfair or deceptive acts or practices." Defendant allegedly violated the CLRA
10 by excluding tires from coverage under the express warranty provided with the subject vehicles
11 at a time when defendant knew or should have known that the tires were defective and would
12 have to be replaced frequently. Defendant further allegedly violated the CLRA by making false
13 and misleading statements regarding the reasons for the adjustment program (Compl. ¶¶ 81–96).

14 Plaintiffs next claim that BMW's plan to reimburse purchasers of 3 Series automobiles
15 for replacement tires constituted a secret warranty-adjustment program under California Civil
16 Code Section 1795.90, *et seq.*, which plaintiffs refer to as the "Secret Warranty Act." BMW
17 has allegedly failed to comply with the requirements of Section 1795.92 by declining to notify
18 owners and lessees of subject vehicles with Turanza run-flat tires about the adjustment program
19 within ninety days of the start of the program. Based on the claimed violations of the Secret
20 Warranty Act, plaintiffs also sue under California's Unfair Competition Law, California
21 Business & Professional Code Section 17200, *et seq.*, due to the above conduct and BMW's
22 failure to include Potenza run-flat tires in the warranty-adjustment program (*id*. at ¶ 61–80).
23 The Unfair Competition Law prohibits engaging in fraudulent, unlawful, and unfair conduct.
24 Plaintiffs allege that defendant's violations of the Secret Warranty Act and CLRA constitute
25 unlawful conduct in violation of the UCL (*id*. at ¶¶ 75–78). Plaintiffs do not bring any other
26 claims based on the Secret Warranty Act violations.

27 Finally, plaintiffs allege that BMW violated California Civil Code Section 1792 by
28 breaching its implied warranty of merchantability because BMW knew or should have known

3

that the subject vehicles were not fit for the ordinary purposes for which such automobiles are used due to the premature and uneven tire wear on the Turanza and Potenza run-flat tires. By marketing and selling the subject vehicles and failing to repair the vehicles by replacing the run-flat tires as needed, BMW allegedly breached its implied warranty of merchantability (Compl. ¶¶ 97–106).

This complaint was filed as a putative class action on May 31, 2007, on the behalf of plaintiffs and all current or former owners and lessees of 2006 and 2007 BMW 3 Series vehicles equipped with Turanza or Potenza run-flat tires. The first amended complaint cited to in this order was filed on August 31, 2007. Defendant filed this motion to dismiss pursuant to Rules 12(b)(6) and 9(b). Subject-matter jurisdiction is appropriate here under 28 U.S.C. 1332(d)(2) because plaintiffs state claims in excess of $5,000,000 for the putative class and because certain class members are citizens of states other than those of defendant, a Delaware corporation.

**ANALYSIS**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusion, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 125 S.Ct. 1955, 1965–65, ___ U.S. ___, (May 21, 2007) (internal citations omitted). "Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1966). The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. Rule 8(a)(2) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief." All material allegations of the complaint are taken as true and construed in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 340 (9th Cir. 1996).

4

Allegations of fraud, however, must meet the heightened pleading standards of Rule 9(b). These require allegations of particular facts going to the circumstances of the fraud, including time, place, persons, statements made and an explanation of how or why such statements are false or misleading. *In re Glenfed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547–48 n.7 (9th Cir. 1994) (en banc).

### 1. CONSUMER LEGAL REMEDIES ACT.

The California Consumer Legal Remedies Act bans certain practices that the California legislature has deemed to be "unfair" or "deceptive." To fall under the CLRA, these unfair acts must be "undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." In the context of this action, the relevant portions of the Act ban:

> (13) Making false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions.
>
> \*     \*     \*
>
> (19) Inserting an unconscionable provision in [a] contract.

Cal. Civ. Code § 1770(a)(13), (19).

Defendant claims that plaintiffs do not have standing to sustain their CLRA claim because the CLRA requires a "transaction" between plaintiffs and defendant. A transaction is defined as "an agreement between a consumer and any other person, whether or not the agreement is a contract enforceable by action, and includes the making of, and the performance pursuant to, that agreement." Cal. Civ. Code § 1761(e). The language of the CLRA is to be "liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." Cal. Civ. Code § 1760.

Plaintiffs argue that the express warranty between vehicle owners and BMW constitutes an agreement. Defendant disputes this and replies that the complaint does not allege that the independent dealers who sold plaintiffs their automobiles were acting as BMW's agents. Plaintiffs reply, however, that BMW warranted the vehicles itself, and the complaint bears this

out by alleging that "BMW provides Plaintiffs and Class members with an express written warranty . . ." (Compl. ¶ 52).

This Court is not convinced by defendant's argument that an express warranty does not constitute an "agreement." Nevertheless, the warranty did not cover the run-flat tires at issue here. As defendant notes, plaintiffs do not allege that any automobile manufacturer or distributor has ever warranted tire wear. Even though there is an express warranty, there is not an agreement concerning tires. Therefore, plaintiffs do not have standing under the CLRA and defendant's motion to dismiss the CLRA claims is **GRANTED**.

### 2.  UNFAIR COMPETITION LAW.

Plaintiffs claim that BMW violated California Business & Professional Code Section 17200, the UCL, due in part to violations of the Secret Warranty Act and the CLRA. The UCL prohibits acts or practices which are (1) fraudulent, (2) unlawful, or (3) unfair.

#### A.  Standing under the UCL.

Defendant contends first that plaintiffs do not have standing to bring claims under the UCL because they cannot meet the requirements of California Business & Professional Code Section 17204. This Section was amended in 2004 by Proposition 64 in order to prohibit UCL suits except those brought by California's Attorney General, district attorneys, city attorneys, or persons who have suffered an "injury in fact" and "lost money or property as a result of []  unfair competition."

In the case of plaintiff Morris, defendant notes that plaintiffs admit that "by virtue of receiving two free tires [under defendant's alleged adjustment program], Morris arguably did not lose money due to defendant's failure to notify customers of its adjustment program (Opp. 7). Plaintiffs, however, argue that Morris has standing because he was deprived of property, namely, the *notice* of the adjustment program. Defendant correctly notes that under this view, everyone who ordered a BMW equipped with Turanza run-flat tires would have lost property, even if they experienced no problems whatsoever. The decision cited by plaintiffs on this point, *Fireside Bank v. Superior Court*, 40 Cal. 4th 1069 (2007), is inapposite, as it does not address such a nebulous theory. In *Fireside*, rather, Gonzalez lost money and property because

6

1  her car was repossessed, the bank pursued a deficiency judgment against her, and she made a
2  post-repossession payment. *Id*. at 1090.  In contrast, Morris merely took advantage of the
3  adjustment program by receiving two free tires under the terms for customers with more than
4  10,000 but less than 20,000 miles on their vehicles.  Thus, Morris does not have standing to sue
5  under Section 17204 and cannot bring a claim under the UCL.

6        Defendant also argues that plaintiff Semow does not have standing because his car was
7  equipped with Potenza run-flat tires, which were not covered by the alleged adjustment
8  program.  Plaintiffs respond that BMW failed to notify Semow of the program or extend the
9  adjustment program to the Potenza tires, which had the same flawed qualities as the Turanza
10  tires.  As a result of this failure on the part of BMW, Semow's vehicle lost value and he was
11  required to replace two of his tires at a cost of $771.  This argument ignores the plain language
12  of Section 1795.92(a), which only requires notification of customers to whom the program
13  applies.  Again, the authority cited by plaintiffs is not on point.  The cited decision, *Cuellar v.*
14  *Ford Motor Company*, 296 Wis. 2d 545, dealt with the Wisconsin Motor Vehicle Adjustment
15  Programs Act, which differs significantly from the California law.  In *Cueller,* an adjustment
16  program was held to apply to different cars built on the same platform because they were
17  identical in all aspects material to the action.  *Id*. at 551 n.3.  This is not analogous to the instant
18  case because the vehicles in this action are different in the most material aspect; they do not
19  have the same tires.  Plaintiff Semow has no standing to sue under the UCL.

20        Finally, defendant contends that plaintiff Cook does not have standing to sue under the
21  UCL.  Plaintiffs allege that Cook took his BMW to a dealer in October 2006, and the dealer
22  noted the tires were worn and uneven.  Plaintiffs do not allege that the dealer told Cook that the
23  tires required replacement, and Cook did not buy new tires at that time.  Instead, Cook bought
24  new tires in April 2007, after exceeding 20,000 miles on the vehicle sometime after February 1,
25  2007.  Since he had exceeded 20,000 miles at that point, Cook's 3 Series vehicle was no longer
26  eligible for replacement tires under the adjustment program.

27        Plaintiffs argue that Cook has standing because if BMW had complied with the notice
28  requirements of the Secret Warranty Act, Cook would have replaced his tires before exceeding

7

1  20,000 miles and thus at least been able to receive two free tires. Defendant argues that Cook
2  did not lose money or property as a result of its practices because Cook declined to purchase
3  new tires until he had exceeded 20,000 miles. This defense argument does not defeat plaintiffs'
4  contention that Cook would have purchased new tires earlier if he had known about BMW's
5  adjustment program. Thus, taking well-pled facts as true, plaintiffs have established that Cook
6  lost money or property and that he has standing to sue under the UCL.

**B.     Plaintiffs Do Not Allege Fraudulent Conduct Under the UCL.**

Fraud is not an essential element of a UCL claim, but any allegations of fraud are subject to Rule 9(b)'s heightened pleading requirements. *Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003). Federal Rule of Civil Procedure 9(b) states "[i]n all averments of fraud or mistake, the circumstances constituting fraud shall be stated with particularity." "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1106. Plaintiffs, however, premise their fraudulent conduct claim on omissions by defendant. A fraud by omission claim does not need to meet the strict requirements of Rule 9(b). In *Washington v. Baezinger*, 673 F. Supp. 1478, 1482 (N.D. Cal. 1987), Judge Weigel noted that in fraud by omission cases, "a plaintiff cannot plead either the specific time of the omission or the place, as he is not alleging an act, but a failure to act." *See also Swedish Civ. Aviation Admin. v. Project Mgmt. Enters. Inc.*, 190 F. Supp. 2d 785, 799 (D. Md. 2002) ("[A]n omission cannot be described in terms of time, place, and contents of the misrepresentation or the identity of the person making the misrepresentation").

While the time, place, and contents of the misrepresentation may not need to be alleged in a fraud by omission claim, the plaintiffs must still allege that there was in fact fraud. In this case, defendant correctly points out that plaintiffs fail to unequivocally allege that BMW had actual knowledge that the tires were defective, instead alleging that BMW "knew or should have known" of the defects, and "performed or should have performed testing" on the tires (Compl. ¶¶ 23, 25). This may be enough to sustain a negligence action, but not fraud. Holding plaintiffs to the language of their complaint, they have not alleged fraudulent conduct under the

8

UCL. Thus, defendant's motion to dismiss the UCL claims for fraudulent conduct is **GRANTED**.

### C. Plaintiffs Sufficiently Allege Unlawful Conduct under The UCL Based on Violations of the Secret Warranty Act.

The unlawful prong of the UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cal. Consumer Health Care Council v. Kaiser Found. Health Plan, Inc.*, 142 Cal. App. 4th 21, 27 (2006). Plaintiffs' unlawful practices claim is premised on violations of the Secret Warranty Act and the CLRA. Plaintiffs' CLRA claims do not survive, but plaintiffs do still allege violations of the Secret Warranty Act.

Plaintiffs allege that BMW's violations of California's Secret Warranty Act, California Civil Code Section 1795.90, *et seq.*, serve as a basis for allegations that the defendant has committed unlawful conduct under the UCL. The Secret Warranty Act requires companies that create an "adjustment program" to notify consumers, dealers, and the New Motor Vehicle Board, and to allow claims by customers who bought a vehicle subject to the program and who paid for repairs for conditions subject to the program to file a claim with the company. Cal. Civ. Code § 1795.92(a)–(e). An adjustment program is defined as follows:

> [A]ny program or policy that expands or extends the consumer's warranty beyond its stated limit or under which a manufacturer offers to pay for all or any part of the cost of repairing, or to reimburse customers for all or any part of the cost of repairing, any condition that may substantially affect vehicle durability, reliability, or performance, other than service provided under a safety or emission-related recall campaign.

Cal. Civ. Code § 1795.90(d).

The Secret Warranty Act requires the following of a manufacturer:

> A manufacturer shall, within 90 days of the adoption of an adjustment program, subject to priority for safety or emission-related recalls, notify by first-class mail all owners or lessees of motor vehicles eligible under the program of the condition giving rise to and the principal terms and conditions of the program.

Cal. Civ. Code § 1795.92(a). The Act then allows consumers who incur expenses for repairing a condition subject to the adjustment program prior to learning of the program to file a claim for

9

reimbursement with the manufacturer. Cal. Civ. Code § 1795.92(d)–(e). The Act defines a "consumer" as a purchaser or lessee of a vehicle or any other person entitled by the terms of the express warranty to enforce the obligations of the warranty. Cal. Civ. Code § 1795.90(a). "Manufacturer" includes for vehicles assembled abroad "any person, firm, or corporation that is engaged in the business of importing motor vehicles." Cal. Civ. Code § 1795.90(b).

Defendants do not deny that they failed to inform the public of the existence of the adjustment program stemming from the TSB. Thus, plaintiffs have successfully alleged violations of the Secret Warranty Act. As discussed previously, however, only plaintiff Cook has standing to sue under Section 17204. Thus, only plaintiff Cook may sue for unlawful conduct under the UCL based on alleged violations of the Secret Warranty Act. Accordingly, defendant's motion to dismiss plaintiffs' unlawful conduct UCL claims is **GRANTED** as to Morris and Semow and **DENIED** as to Cook.

### D. Plaintiffs Sufficiently Allege Unfair Conduct Under the UCL.

As the Ninth Circuit recently noted, "California's unfair competition law, as it applies to consumer suits, is currently in flux." *Lozano v. AT&T Wireless Services, Inc.*, 2007 U.S. App. LEXIS 22430 at *44 (9th Cir. September 20, 2007). In *Lozano*, the Ninth Circuit noted that the California Supreme Court has rejected a balancing test for unfairness in suits involving unfairness to the defendant's competitors. *See Cel-Tech Comms., Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163 (1999). In *Cel-Tech*, the California Supreme Court stated the following:

> [T]o guide courts and the business community adequately and to promote consumer protection, we must require that any finding of unfairness to competitors under section 17200 be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition. We thus adopt the following test: When a plaintiff who claims to have suffered injury from a direct competitor's "unfair" act or practice invokes section 17200, the word "unfair" in that section means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition.

*Id.* at 186–87.

The Ninth Circuit stated that "[t]he California courts have not yet determined how to define 'unfair' in the *consumer* context." *Lozano,* 2007 U.S. App. LEXIS 22430 at *44.

10

Reading *Cel-Tech* literally, some California courts have found *Cel-Tech* only applicable to cases involving competitors and not to consumer actions, and have continued to use the balancing test for unfairness from *South Bay Chevrolet v. General Motors Acceptance Corporation*, 72 Cal. App. 4th 861 (1999), in those circumstances. *See McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457 (2006) ("The test of whether a business practice is unfair involves an examination of that practice's impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer"). Other courts have created or adopted their own tests. The authorities cited by both sides in the instant case use a test developed by California's Second District Court of Appeal, which defines unfairness using the so-called "section 5" test from the Federal Trade Commission Act, 15 U.S.C. 45(n).[*] *See Daugherty v. American Honda Motor Co., Inc.*, 144 Cal. App. 4th 824 (2006); *Camacho v. Automobile Club of Southern California*, 142 Cal. App. 4th 1394 (2006). The Ninth Circuit expressly rejected that test in *Lozano*, stating that while "*Cel-Tech* effectively rejects the balancing approach, we do not agree that the FTC test is appropriate in this circumstance" because while the California Supreme Court did reference the FTC section as a source of guidance, that discussion dealt with competitors, not consumers. *Lozano,* 2007 WL 2728758 at *45–*46.

According to the Ninth Circuit, "the remaining options are to apply *Cel-Tech* directly . . . and require that the unfairness be tied to a 'legislatively declared' policy or to adhere to the former balancing test under *South Bay*." *Ibid*. (internal citations omitted). The Ninth Circuit in *Lozano* stated that adopting either the *Cel-Tech* or *South Bay* standard "does not necessitate rejection of the other," and upheld a district court's decision to use the old balancing test from *South Bay* "in the absence of further clarification from the California Supreme Court." *Lozano*, 2007 WL 2728758 at *47. It did not compel the use of the balancing test.

It is clear that there is uncertainty in the California Courts regarding the application of *Cel-Tech* in the consumer context. Although the California Supreme Court did not reach the

---

[*] The "Section 5" test is: (1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably had avoided. 15 U.S.C. 45(n).

11

issue of consumer cases, the rationale of *Cel-Tech* nonetheless compels the conclusion that the unfairness prong must be tethered to some legislative policy, otherwise the courts will roam across the landscape of consumer transactions picking and choosing which they like and which they dislike. *Lozano* did not rule out this holding.

In the instant case, neither side discusses in their briefs the issue of a legislatively declared policy in the context of unfairness. Rather, both sides cite to authority employing a balancing test for unfairness. Plaintiffs do, however, contend in the complaint that BMW engaged in unfair conduct in part because it did not meet its obligations under the Secret Warranty Act when it failed to disclose the adjustment program (Compl. ¶¶ 69, 76). The Secret Warranty Act is an example of a legislative policy favoring candor on the part of automobile manufacturers, distributers, and dealers that utilize adjustment programs. The Act is intended to protect consumers from companies that would seek to hide defects and problems with their automobiles. By including BMW's alleged violation of the Secret Warranty Act as unfair conduct, plaintiffs have alleged enough to sustain a claim for unfairness under the UCL. Since only plaintiff Cook has standing to sue under the UCL, defendant's motion to dismiss the UCL claims for unfair conduct is **GRANTED** as to plaintiffs Morris and Semow and **DENIED** as to Cook.

### 3. BREACH OF IMPLIED WARRANTY.

Plaintiffs finally allege that defendant breached an implied warranty of merchantability under California Civil Code Section 1791.1(a)(2). Specifically, plaintiffs contend that the tires on defendant's vehicles were not "fit for the ordinary purposes for which such goods are used." Cal. Civ. Code § 1791.1(a)(2). Plaintiffs allege that the Turanza and Potenza run-flat tires wore out in many cases in less 10,000 miles and that they required more frequent replacement than with normals, non-defective tires (Compl. ¶¶ 23–26). In *Isip v. Mercedes-Benz USA, LLC,* 155 Cal. App. 4th 19, 27 (2007), the court held that "[d]efining the warranty in terms of a vehicle that is 'in safe condition and substantially free of defects' is consistent with the notion that the vehicle is fit for the ordinary purpose for which a vehicle is sued." Defendant attempts to restrict this to the level of defects described in *Isip*, in which the vehicle in question lurched and emitted

smoke, but this order sees no reason why *Isip* should be so limited. Plaintiffs' have alleged enough to sustain claims for breach of the implied warranty of merchantability and, therefore, defendant's motion to dismiss these claims is **DENIED**.

**CONCLUSION**

For the reasons given, defendant's motion to dismiss plaintiff Morris's and plaintiff Semow's claims for violations of California Civil Code Section 17200 and plaintiffs' claims under the CLRA is **GRANTED**. Defendant's motion to dismiss under Rules 12(b)(6) and 9(b) is **DENIED** as to plaintiffs' breach of implied warranty of merchantability claims. Plaintiff Cook's claims under the UCL for unlawful conduct, based on alleged violations of the Secret Warranty Act, and unfair conduct, survive as well.

Plaintiffs will be allowed to file a motion for leave to file an amended complaint. The motion should be accompanied by a copy of the proposed pleading and the motion should explain why the proposed amendments remedy problems identified by this order. The motion should be filed no later than **NOVEMBER 20, 2007**. Defendant's opposition will be due no later than **NOVEMBER 27, 2007**. This round of submissions will in effect serve as a dismissal motion, as well as for the proposed pleadings so the oppositions should include all Rule 12-type arguments. Plaintiffs' reply will be due no later than **DECEMBER 4, 2007**. The Court will then determine if a hearing is necessary.

**IT IS SO ORDERED.**

Dated: November 7, 2007.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE